L. PUCILLO & SONS, INC., PLAINTIFF-APPELLANT, v. MAYOR AND COUNCIL OF THE BOROUGH OF NEW MILFORD AND ANGELO PACIO, TRADING AS PACIO SANITATION, DEFENDANTS-RESPONDENTS.

Argued March 7, 1977—Decided May 12, 1977.

Mr. *Mark D. Larner* argued the cause for appellant (*Messrs. Budd, Larner, Kent, Gross, Picillo and Rosenbaum,* attorneys).

*Mr. Mario R. LaBarbera* argued the cause for respondents Mayor and Council of the Borough of New Milford.

*Mr. Leopold A. Monaco* argued the cause for respondent Angelo Pacio, trading as Pacio Sanitation.

The opinion of the court was delivered by

PASHMAN, J. This appeal concerns the validity of a municipality's waiver of certain deviations from its bidding specifications in awarding a garbage scavengers contract. Defendant Borough of New Milford (Borough) originally requested bidders to submit proposals for contracts of one, two, three and five years' duration. Defendant Angelo Pacio, trading as Pacio Sanitation (Pacio), entered bids on the first three proposed contracts, but failed to submit a proposal for the five-year contract. Plaintiff L. Pucillo & Sons, Inc. (Pucillo) and a third competitor bid on all alternatives. The Borough decided to enter into a three-year contract with Pacio, and agreed to waive any nonconformance with the bidding instructions caused by his omission of a five-year bid. Pucillo then brought this action challenging Pacio's status as the "lowest responsible bidder" under *N. J. S. A.* 40A:11–6.1a. The Law Division and the Appellate Division upheld the award and Pacio began work as scheduled on January 1, 1976. We subsequently granted certification, 70 *N. J.* 151 (1976), and now reverse.

Plaintiff concedes that Pacio submitted the low bid on the three-year contract,[1] but argues that Pacio was not the lowest "responsible" bidder because he failed to comply with the Borough's specifications. See *Hillside v. Sternin,* 25 *N. J.* 317, 324 (1957). Accordingly, plaintiff maintains that

---

[1] Pacio's $566,739 bid was substantially below the figures submitted on the three-year contract by other bidders. Pucillo bid $831,600 for the same term and the third bidder, Vito Stamato & Co., Inc., bid $855,000. Pacio also submitted the lowest estimates for the one- and two-year contracts. See n. 5 *infra.*

this deviation from the bidding instructions disqualified Pacio from being awarded all contracts, including those for which he submitted estimates. Plaintiff offers two reasons for rejecting defendants' contention that the Borough could legally reserve the prerogative to waive noncompliance with the requirement to bid on all alternatives: (1) other potential bidders may have been willing to submit estimates if they had known that they would not have been held to the requirement of bidding on all contracts and (2) the actual bidders' costs and risks were greater than Pacio's and placed them at a competitive disadvantage.

The lower courts rejected these arguments. The Law Division judge interpreted the language in the specifications as permissive, thus disputing plaintiff's assumption that the Borough had made bids on all proposals mandatory. Since Pacio was eliminated from consideration from the five-year contract, for which he did not bid, the court held that the requisite "equal footing" among bidders had been maintained on all options. Stressing that the Borough's decision to award the three-year contract was most economical for the municipality, the trial judge found that its waiver was technical in nature and served the public interest. In an unreported decision, the Appellate Division affirmed for substantially the same reasons, adding only that the irregularity "did not afford [Pacio] any competitive advantage over the other bidders and did not tend to stifle competition."

The critical question in this case is whether the portion of the bidding specifications which directed garbage scavengers to submit proposals on all options was mandatory or permissive.[2] Since there is no dispute concerning the facts of

---

[2]In granting certification, we requested the parties to submit supplemental briefs on an issue not addressed below: whether the Borough's requirement that all bidders bid on all options was consistent with public policy. See *N. J. S. A.* 40A:11–13. Before this Court, all parties agree that such a condition is valid. Since it appears that there is no dispute concerning this point and it further appears that plaintiff would lack the requisite standing to assert this argu-

this case, resolution of this issue turns on the meaning of the language utilized in the specifications.

The Borough initially advertised for bids on September 4, 1975, and announced that sealed bids, prepared in accordance with its specifications and bid proposal forms, would be received on September 17, 1975. Its public notice to garbage scavengers also contained the following statement:

The Mayor and Council reserves [sic] the right to waive any informalities and the right to reject any and all bids to the best interest of the Borough of New Milford.

Interested bidders received four bid proposal forms, for one, two, three and five-year contracts;[3] a questionnaire concerning their financial ability and experience in performing public work; and detailed specifications for completion and submission of the required documents. Among the provisions of the bidding specifications were these warnings:

Bidders are cautioned not to attach any conditions, limitations, provisos or restrictions to any proposal, or to make any changes or erasures on the proposal blank, as such conditions, limitations, erasures or provisos may render the bid informal and cause its rejection.

Bidders are cautioned also that all proposals *must* be bid upon. Failure to indicate a bid may render the bid informal and cause its rejection.

The word "must" was underlined by the Borough.

In addition to the bids on various options, the Borough required each bidder to submit a certificate from a surety company indicating that it would furnish a performance bond to that bidder, if successful, within ten days after the contract was awarded. See *N. J. S. A.* 40A:11–22. And as protection

---

ment even if it thought differently, *Waszen v. City of Atlantic City*, 1 *N. J.* 272, 276 (1949), we offer no opinion as to this issue.

[3]By statute, a municipality may not enter into a contract for the collection and disposal of garbage and refuse for any term exceeding five years. *N. J. S. A.* 40A:11–15(3).

against withdrawal of a bid, the Borough also demanded a guaranty in the form of a certified check or bank cashier's check for 10% of a bidder's highest bid price. See *N. J. S. A.* 40A:11–21.[4]

The Mayor and Council reiterated their right to reject "any or all bids, if in the interest of the Borough it is deemed advisable to do so." They announced the following policy:

> The Borough Council reserves the right, after receiving the bids to choose the terms of years which it believes is to the best interest of the Borough; *and the award, if made, will be to the lowest responsible bidder for that particular term of years, provided his bid complies in all respects with the requirements therefore as contained therein,* and provided he has submitted satisfactory evidence of his ability to execute the work satisfactorily and of ownership by him of the necessary capital and equipment to carry out this contract, without default or interference.
>
> [Emphasis supplied.]

Pacio submitted bids for the one, two and three-year contracts which were in full compliance with the specifications and substantially below the estimates of his competitors.[5] As noted, he failed to complete the bid proposal for the five-year contract or to provide the requisite bid bond and consent of surety. Both Pucillo and Stamato bid on all options.

---

4As drafted, the specifications stipulated that the check be made payable to the Borough in the sum of 10% of the "Bid Price." The parties interpreted this provision to apply to the highest bid.

We note that this requirement violates *N. J. S. A.* 40A:11–21 which provides that a guarantee "shall be in the amount of 10% of the bid, *but not in excess of $20,000.00.*" [Emphasis supplied.] *See Waste Disposal Inc. v. Mayor & Council of Roselle Park,* 145 *N. J. Super.* 217 (App. Div. 1976). Plaintiff did not have standing to challenge this illegal condition, and neither lower court passed upon its propriety. *See Camden Plaza Parking v. City of Camden,* 16 *N. J.* 150, 158 (1954) ; *Waszen v. City of Atlantic City, supra,* 1 *N. J.* at 276. For the purposes of this discussion, therefore, we shall overlook this irregularity.

5Pacio underbid Stamato by $48,250 on the one-year term; Pucillo by $155,813 on the two-year term; and Pucillo by $264,861 on the three-year term. Pucillo bid $120,000 less than Stamato on the five-year contract.

On October 16, 1975, the Mayor and Council of the Borough adopted a resolution awarding a three-year contract to Pacio as the low bidder. There is no suggestion that they acted for any reason other than to secure the most advantageous financial arrangement for the municipality.

The lower courts attempted to distinguish this case from those in which the specifications had been clear and unequivocal in requiring bids on all proposals, pointing to the sentence "failure to indicate a bid may render a bid informal and cause its rejection." Although this warning was immediately preceded by the statement "Bidders are cautioned that all proposals *must* be bid upon," they interpreted the word "may" to qualify the seemingly unconditional nature of that command.

██ We are unable to accept this view for several reasons. First, the word "must" was deliberately highlighted by the Borough and set apart in the text. Indeed, it was the only word in the lengthy set of documents which was given such emphasis. That sentence clearly indicates that the Borough made bids on all options mandatory. Second, the warning that failure to bid on all alternatives might cause rejection of the entire bid could hardly be considered controlling, since at best it creates an ambiguity. It is settled that bidding requirements particularly those involving material items, should be unmistakably clear. Vague, ambiguous and conflicting terms may seriously affect the purpose of competitive bidding. The Borough inserted the same cautionary note in paragraph 2, where it instructed bidders not to make any changes in the bid proposal forms.

Essentially, defendants urge us to adopt a reading of the specifications which would leave the Borough with the fullest possible discretion. They would have us interpret this paragraph merely as a notification to bidders that failure to bid on each contract would subject them to possible disqualification for all contracts. The Borough would be free to reject a low bidder for such an omission, but it could accept a

non-conforming bid when it was "in the best interests of the municipality."

The long-standing judicial policy in construing cases governed by the Local Public Contracts Law, *N. J. S. A.* 40A:11–1 *et seq.* and its predecessors, has been to curtail the discretion of local authorities by demanding strict compliance with public bidding guidelines. *See, e. g., Hillside Tp. v. Sternin, supra,* 25 *N. J.* at 325–26; *A. C. Schultes & Sons v. Haddon Tp.,* 8 *N. J.* 103, 108 (1951); *Waszen v. City of Atlantic City, supra,* 1 *N. J.* at 283 (1949); *J. Turco Paving Con., Inc. v. City Council of Orange,* 89 *N. J. Super.* 93, 103 (App. Div. 1965); *Belousofsky v. Board of Education of City of Linden,* 54 *N. J. Super.* 219, 223 (App. Div. 1957); *Case v. Trenton,* 76 *N. J. L.* 696, 700 (E. & A. 1909); *Armitage v. Newark,* 86 *N. J. L.* 5, 10 (Sup. Ct. 1914). Bearing in mind the purposes of the act—"to guard against favoritism, improvidence, extravagance and corruption" and "to secure for the public the benefits of unfettered competition", *Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth.,* 67 *N. J.* 403, 410 (1975)—our courts have adopted this approach largely as a prophylactic measure. As Justice Francis observed in *Hillside Tp. v. Sternin, supra*:

In this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way.

[25 *N. J.* at 326]

We would have no objection to a procedure in which bidders were clearly told that they could select one or several options on which to bid. We are not, however, willing to transform the mandatory requirement in these specifications into a polite request. The ordinary reader of the specifications would regard them as calling for bids on all the terms specified. Awarding the contract to one who failed to submit bids on all terms necessarily created an inequality in the bidding and an opportunity for favoritism.

██ There is little doubt that Pacio's failure to bid on all options was not a minor irregularity which could be waived, see *Tp. of River Vale v. R. J. Long Const. Co.*, 127 *N. J. Super.* 207 (Law Div. 1974); *Young v. West Orange Redv. Agency*, 125 *N. J. Super.* 440 (App. Div. 1973); but rather was a substantial departure which could not be overlooked, see *Hillside Tp. v. Sternin, supra*, 25 *N. J.* at 324; *Case v. Trenton, supra*, 76 *N. J. L.* at 699–700. Justice Mountain recently formulated the distinction between material and non-material conditions in *Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., supra*:

> Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding.

He noted that such requirements must be distinguished from conditions

> whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid *or to influence any potential bidder to refrain from bidding*, or which are capable of affecting the ability of the contracting unit to make bid comparisons . . .
>
> [67 *N. J.* at 412; emphasis supplied.]

The latter category of conditions, he found, "are the kind . . . which may not under any circumstances be waived." *Id.*

The lower courts, in holding that Pacio's competitors were not prejudiced by his failure to bid, ignored the possibility that the Borough's requirement may have deterred other potential bidders from even submitting proposals. The Borough's specifications called for a bid bond in the amount of 10% of the bid price for the five-year contract. This considerable outlay of funds, coupled with the expense and difficulty of securing a consent of surety for a performance bond on the five-year contract, may have been beyond the ability of some companies which would have been fully capable of discharging

the obligations of a shorter contract. In addition, the increased risk of contracting so far in advance may also have discouraged other bidders. As in *Case v. Trenton, supra,* 76 *N. J. L.* at 700, the condition was material because its presence "may have deterred others from bidding who would have bid had they known that these conditions would be waived."

These same factors—lesser bidding expenses (Pacio was not required to deposit a check for the higher five-year estimate) and more limited risks—may also have placed Pacio on a different footing *vis-a-vis* Pucillo and Stamato for the three contracts for which he did compete. It is conceivable that they would have submitted lower bids on the shorter contracts if they too had been released from the obligation to bid on the five-year contract. While the disparity between bids may cast doubt on that hypothesis, we are not prepared to rule out the possibility that more perfect conditions of equality between competitors might have yielded a better economic result to the public. Pacio's deviation from the specifications gave him a palpable economic benefit which gave him an advantage over his competitors and undermined the necessary common standard of competition. *Tp. of River Vale v. R. J. Long Const. Co., supra,* 127 *N. J. Super.* at 216. This competitive edge distinguishes this case from other decisions in which a variation in the form of the security was permitted. *See Tp. of River Vale v. R. J. Longo Const. Co., supra,* 127 *N. J. Super.* at 221 (bid bond instead of certified check); *Young & Co. v. West Orange Redev. Agency, supra,* 125 *N. J. Super.* at 444 (App. Div. 1973) (certified check for two separate contracts attached to wrong bids); *P. Michelotti & Sons v. Fair Lawn,* 56 *N. J. Super.* 199. 202–03 (App. Div. 1959) appeal dism'd 31 *N. J.* 556 (1960) (uncertified instead of certified check, later cured); *but see Tp. of Hanover v. Inter. Fidelity Ins. Co., supra,* 122 *N. J. Super.* at 551 (bid bond for small amount less than required).

Since we find that the Borough's waiver of a mandatory requirement in the bidding specifications was beyond the

lawful authority of the Mayor and Council under the instant specifications, it follows that the contract entered into by Pacio and the Borough is void. Although plaintiff originally sought to disqualify Pacio in order to secure the contract for itself as the lowest "responsible" bidder, it now suggests that the more reasonable remedy is to set aside the current contract and permit the municipality to receive new bids for the balance of the three-year term. In view of the substantial period of time which has elapsed since the submission of bids, we adopt its suggestion that the municipality be permitted to re-advertise for new bids. However, we do not limit said bids to the balance of the three-year contract entered into between the defendants. The Borough may, in its discretion, solicit proposals for any term up to the statutory maximum of five years. See *N. J. S. A.* 40A:11-15(3).

We hereby direct the Mayor and Council of New Milford to advertise for new bids to be received within 30 days of this opinion. Work on the new contract should begin no later than 60 days after the date of this decision, unless the Borough shows good cause for further extension of the present arrangement for a limited period of time. In the meantime, defendant Pacio will continue to provide scavenger services to the municipality under the terms of the present contract. Compensation for past and future services shall be paid on a per diem basis according to the contractual rate.

Reversed.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.