168 N.J. Super. 33 (1979)
401 A.2d 705
IN THE MATTER OF THE AWARD OF THE CONTRACT FOR THE CONSTRUCTION OF BAYONNE PARK, LINCOLN PARK AND JAMES J. BRADDOCK-NORTH HUDSON PARK BIKEWAY SYSTEM, HUDSON COUNTY.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1979.
Decided April 3, 1979.
*35 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Mark D. Larner argued the cause for appellant Marsellis-Warner Corporation (Messrs. Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys).
Mr. Dante J. Romanini argued the cause for respondent Department of Transportation (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Erminie Conley, Assistant Attorney General, of counsel).
*36 Mr. Anthony F. Sarsano argued the cause for Massare Brothers (Mr. Bernard A. Schwarz, attorney).
The opinion of the court was delivered by MORGAN, J.A.D.
Notified on February 1, 1978 that its bid for a project known as "For the Construction of Bayonne Park, Lincoln Park and James J. Braddock-North Hudson Park Bikeway System, Hudson County Federal Project No. BW-M-OOS(146), D.O. #375," was the lowest bid submitted and that it was being awarded the job, Massare Brothers nonetheless delayed submission of the executed contract and performance bond well past the ten-day period from the date of award permitted in the bid specifications. The admitted fact was that those documents were not delivered to the Department of Transportation until March 16, 1978. Following a hearing held on the ensuing challenge by appellant Marsellis-Warner Corporation, the next lowest bidder on the job, the hearing examiner recommended that the award to Massare Brothers be nullified and be given instead to appellant. The Commissioner of Transportation. however, declined to follow this recommendation, directed execution of Massare's contract, and this appeal followed. The issue raised herein concerns the materiality and consequent waivability of the requirement in the bid specifications that submission of the executed contract and bond be made not later than ten days following the award. A finding of materiality normally precludes waiver of the requirement; a contrary finding permits waiver of a violation of that requirement.
The facts are free from dispute and are drawn primarily from the testimony at the hearing held in response to appellant's challenge to the award and the findings of fact based thereon. They disclose that bids on the project were received by the Department of Transportation on December 15, 1977 and were opened on that date in the presence of Thomas Massare, one of the two partners of Massare Brothers, *37 who thereby obtained knowledge that their bid at $130,260.50 was the lowest, the next lowest bid being the one submitted by appellant Marsellis-Warner at $147,475.88. Formal notification to Massare Brothers that it was being awarded the job was made by letter dated February 1, 1978 containing specific instructions that Item 1.3.5 of the Standard Specifications required return of the executed contract and bond "within ten working days after the date of the Award." Although this notification was mailed on February 1, 1978 (certified mail, return receipt requested), the letter was not actually received until February 13, 1978 when Thomas Massare finally picked up the letter at the post office. Quite obviously, the daily monitoring of incoming mail was not part of Massare's office routine. Notwithstanding admitted receipt of the letter on that date and the clear instructions contained therein concerning time limitations on the return of the executed contract and bond, no action to comply was taken until more than a month later. During this period of inaction Joseph S. Oswald, Chief, Bureau of Contract Administration, attempted several times to reach the Massares by telephone. Calls were placed on February 14, 16, 22 and 27, and finally on March 1, 1978. On each occasion Oswald reached Massare's answering service, was advised that the Massare brothers were on vacation, and that the call would be returned. None of them was.
Accordingly, Oswald wrote another letter on March 1, 1978, again advising the Massares of the necessity of returning the executed contract and bond and, incidentally, recounting his unsuccessful efforts to reach them by telephone. This letter, originally sent to a wrong address, was remailed correctly on Friday, March 8, 1978. It was received on Monday, March 10, 1978, when Thomas Massare picked it up at the postoffice. On March 13, 1978 Massare telephoned Oswald and on March 16, 1978 finally delivered the overdue contract and bond. In a letter submitted with these documents Thomas Massare advised that the delay in the submission was "due to the fact that I have been away on vacation and *38 just returned," a fact later shown to be untrue. Following receipt of this letter Oswald immediately notified Jack Friedenrich, Director of Engineering and Operations (State Highway Engineer), that the contract and bond had been received; Friedenrich directed that the contract be executed and that appellant Marsellis-Warner be advised of that fact. Appellant, who had previously been placed on a stand-by notice by reason of Massare's delay, lodged a challenge to the award, thus precipitating the hearing to which reference has already been made.
At the hearing the reasons for the delay were explored. It turned out that Thomas Massare had been in Puerto Rico on vacation during January and in Martinique during the beginning of February 1978. He had, of course, returned by February 13, 1978 when he picked up Oswald's first letter. His subsequent inaction on the contract was sought to be explained by a mental depression from which he was suffering, which caused him to do little if anything concerning his business. His brother Anthony was given little or no information concerning the pendency of the award despite the admitted fact that Thomas knew as of December 1977 that the partnership was the low bidder on the job. Anthony was given no responsibilities with respect to office administration and was apparently not even required to pick up mail or check on incoming calls with the firm's answering service. In any event, it was not until Oswald's second letter was received that Thomas Massare was moved to action. At the hearing he evinced his enthusiasm for the job and testified that his mental state had improved to the point where he would be able to undertake it.
The hearing examiner's findings of fact, which mirrored the foregoing recitation, concluded with the following observations and recommendations:
Massare's illness does not adequately explain the extent of the delay, nor the absence of any communication to the Department prior to March 13, 1978. If Thomas Massare was ill and unable *39 to perform his office functions they should have been assumed by Anthony Massare. This is essential business practice. Also, I do not believe that Thomas Massare was unable to communicate the reasons for the delay to the Department prior to March 13, 1978. Massare was in receipt of two letters from Mr. Oswald (S-5, S-6) and five telephone communications from Mr. Oswald to the answering service. Although Mr. Massare's illness is unfortunate, it cannot be accepted by the Department as sufficient explanation of a delay of at least 30 days (from February 14, 1978).
The Department must always consider the public interest, which demands that construction projects be completed as quickly as possible. A delay of more than 30 days seriously impairs the Department's contracting program, causing undue delay in the completion of projects. Under the facts of this case the delay cannot be tolerated. In fact, Massare's complete inability to function under the circumstances testified to further weakens the merits of their case. * * *
The Commissioner, however, declined to follow this recommendation because he concluded that the severe 1978 winter precluded commencement of the work on the project. That being so, the State was not prejudiced by the delay and because the breach was of a post-award requirement, a waiver thereof would not create an inequality of competitive conditions or otherwise compromise the integrity of the bidding system.
Consideration of the projected issue must be made against the background of the acknowledged purposes of our bidding statutes. Strict compliance with statutory and bid specifications is required to secure equality in competitive bidding and avoid opportunities for favoritism, improvidence, extravagance and the exertion of corrupt influences. Consequently, any bidding practice which tends to favor one bidder over another, or impairs the equal basis upon which bids are computed, or which opens a door to possible corrupt considerations cannot be tolerated, whether or not the practice in fact exerts a harmful effect in the given situation. See Pucillo v. New Milford, 73 N.J. 349 (1977); Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403 (1975); Hillside Tp. v. Sternin, 25 N.J. 317 (1957); Tufano *40 v. Cliffside Park, 110 N.J.L. 370 (Sup.Ct. 1933). The judicial attitude toward resolution of issues concerning violations of bidding requirements was best summed up in Hillside Tp. v. Sternin:
In this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore in such cases speculation as to whether or not it was purposely left that way. [25 N.J. at 326]
The distinction between material and nonmaterial conditions, the central issue projected, has recently been formulated in the following terms:
Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions which may not under any circumstances be waived. [Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. at 412]
In this matter the bid specifications, Items 1.3.4. and 1.3.5, require the bidder to whom the contract has been awarded to deliver a surety corporation bond and the executed contract within ten business days of an award.[1]
*41 These specifications are in conformity with the legislative command. N.J.S.A. 27:7-31 provides:
A proposal bond equal to at least 50% of the bid, executed by the contractor with such sureties as shall be approved by the commissioner in favor of the State of New Jersey, shall accompany each bid and shall be held as security for the faithful performance of the contractor in that, if awarded the contract, the bidder will deliver the contract within 10 working days after the award, properly executed and secured by satisfactory bonds in accordance with the provisions of N.J.S. 2A:44-143 to N.J.S. 2A:44-147 and the specifications for the project. [Emphasis supplied]
Item 1.3.6 of the specifications provides that failure by the successful bidder to return the executed contract and bond within ten days from the date of the award "shall be just cause for annulment of the award and for the exclusion of the bidder from bidding on subsequent projects for such period as the Commissioner may deem appropriate." Although this provision clearly invests the Commissioner with discretion to waive a violation, we are not thereby relieved of the necessity for determining whether such discretion could have been granted. Rather we must determine whether the policy considerations inherent in the bidding statutes permit a waiver, and its extent, and that determination in turn depends upon the materiality vel non of the requirement.
Appellant takes the position that it is material, although conceding that such a characterization should not, at least as to post-award requirements, be held to deprive the Commissioner of all discretion to waive minor irregularities with respect to compliance. In support of this position appellant argues that the requirement for prompt submission of the executed contract and bond places all potential bidders on notice that, if successful, they will be required to proceed with the work promptly after the award is made. Consequently, as appellant notes, all those contemplating a bid must be prepared to commit their equipment, labor, financial resources and, perhaps most importantly, a significant portion of their bonding capacity to the project. Those unable to make such a *42 commitment, because of pending uncompleted work, may abstain from submitting a bid, unaware that this requirement could be waived by the Commissioner. Hence, the latitude with respect to the requirement for prompt contract and bond submission allowed in this case may well operate to the prejudice of those who abstained from bidding because of a perceived inability to comply. Moreover, appellant contends that knowledge of a permitted flexibility in the date upon which the executed contract must be returned may well have an effect upon the amount of the bid. Requirements which may induce potential bidders to withhold bids or which may affect the amount of bids actually made do suggest the materiality of such a requirement. Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., supra.
We cannot regard these contingencies as being minor matters, particularly in light of the strict compliance with bid specifications demanded by established case law. In Pucillo v. New Milford, supra, bids were solicited for garbage scavenger contracts of one, two, three and five years duration. The low bidder, submitting bids on the first three contracts, declined to bid on the five-year contract. The appellant, and all the other bidders, complied with specifications and bid on all four contracts. The borough elected to accept a bid on the three-year contract and awarded the job to the low bidder. Although the successful bidder had submitted the low bid for the three-year contract, and all bidders had bid on the contract of that duration, the court nevertheless invalidated the award for his failure to have bid on the five-year contract, reasoning that because all bidders would regard the specifications as requiring a bid on all terms specified, awarding the contract to one who had not bid on all contracts "created an inequality in the bidding and an opportunity for favoritism." Id. at 356. The court noted that the presence of the requirement of bids for all lengths of contract commitment "may have deterred other potential bidders from even submitting proposals." Id. at 357. Lesser bidding expenses resulting from the absence of a proposal on the five-year contract created a "possibility *43 that more perfect conditions of equality between competitors might have yielded a better economic result to the public." Id. at 358. Emphasis supplied.
Applied to the present matter, Pucillo clearly suggests that the possibility that other bidders may have been deterred by the requirement for prompt submission of the contract and bond requires a conclusion that this post-award requirement be viewed as material and hence nonwaivable. The expansive scope of discretion, exercised in this case, would defeat the legitimate expectations of those who submitted proposals despite this requirement and those who, because unable to meet this requirement, may have declined to bid.
Moreover, a waiver of the violation of this post-award requirement, particularly in the aggravated circumstances disclosed by the record, does, in our view, provide a medium for the exercise of favoritism and an opportunity for the exertion of corrupt influence. Although no one even suggests that any such considerations motivated the challenged decision  nor do we  such is not the test. The question is whether a waiver, in the given circumstances, provides the opportunity for such conduct. We conclude that it does. The delay here was not minor or trivial. Good faith attempts to comply were totally missing.
The Commissioner's distinction between pre-award requirements and those which obtain only after an award has been made, based upon reasoning that with respect to the latter, violations thereof fail to affect the integrity of the bidding system, is, in our view, largely illusory. That a violation concerns a post-award rather than a pre-award specification does not, by that fact alone, settle the materiality of the requirement or the waivability of a violation thereof. Those questions must be answered only after an analysis of the effect of the requirement and a waiver thereof on those who have submitted bids, those who would have but because of the requirement might not have bid, and the possible vehicle for favoritism and corruption which might be engendered by a waiver of the violation. So analyzed, we are *44 convinced that this post-award requirement of prompt action on the contract and bond, finding its source in statute as well as in the specifications, was material. The substantial deviation encountered in this case, if tolerated, and if known to be capable of waiver, in our view, tends to frustrate the fundamental objectives of our bidding system. Indeed, overlooking the major dereliction here involved suggests that this post-bid requirement is enforceable solely at the whim of the contracting unit.
Massare's excuse for the dereliction, submitted with the late contract and bond, was untrue; Thomas Massare's absence on vacation was not the reason for the extended delay. After returning from vacation he did nothing with respect to the contract, although he had been specifically advised of the necessity for prompt return of the executed contract and bond. He failed to respond to the letter and to the subsequent telephone calls, although he had to know at the time that he was already in default. He failed to check with his own answering service as to possible incoming calls despite his knowledge of the pendency of the award. His mental incapacity did not cause him to shift some of his minor administrative responsibilities to his brother, such as those involving mail and phone calls. Such irresponsibility instills little confidence in his ultimate ability to complete the job awarded him. Should a waiver of a violation of this magnitude be countenanced, it is difficult to conceive of any bounds to such discretion. Unlimited discretion permits a waive on purely personal grounds and in response to corrupt overtures. It is precisely this kind of opportunity that our bidding system was designed to avoid.
In our view, the materiality of a specification requirement must be determined without regard to whether the requirement must be met before the bid or after the contract has been awarded. The guiding considerations spelled out in Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., supra, govern. As applied here, we have no doubt that a deviation as great as the one here encountered, if tolerated *45 and known to be capable of being waived, would create inequality and a means of effectuating favoritism, thus destructive of the essential aims of the bidding procedure.
We do not mean to suggest that the Commissioner lacks all discretion with respect to post-award specification requirements. As to such requirements, material in nature, such as the one here involved, he is invested with a narrowly circumscribed discretion to avoid harsh penalties for minor and largely unavoidable derelictions from which no prejudice has resulted. Such flexibility would not, we are sure, impair the objectives of public bidding. Where, however, the dereliction is as great as that encountered here, there no longer exists any legitimate basis for a discretionary waiver of a breach even of a post-bid requirement. Absence of prejudice alone is not enough.
The award of the contract to Massare Brothers is reversed and the matter remanded to the Commissioner for further action with respect to the project. We express no view as to whether he award the contract to the appellant or solicit new bids.
We do not retain jurisdiction.
NOTES
[1] Contract Bond
Within ten State business days of the date of the award of the contract, the bidder to whom the contract has been awarded shall furnish and deliver a surety corporation bond, satisfactory to the Commissioner * * *.
1.3.5. Execution of Contract
Within ten State business days of the date of the award of the contract, the bidder to whom the contract is awarded shall execute and deliver the necessary documents entering into the contract with the State * * *.