406 So.2d 461 (1981)
BAXTER'S ASPHALT & CONCRETE, INC., a Florida Corporation, Appellant,
v.
LIBERTY COUNTY, a Political Subdivision of the State of Florida; L.B. Arnold, Jack E. Summers, Jimmy Johnson, Richard Phillips and Donnie Gene Tharpe, As Constituting the Board of County Commissioners of Liberty County, a Political Subdivision of the State of Florida; and Gulf Asphalt Corporation of Panama City, a Florida Corporation, Appellee.
No. VV-370.
District Court of Appeal of Florida, First District.
March 10, 1981.
On Rehearing November 18, 1981.
*462 James J. Richardson and Barry Richard of Roberts, Miller, Baggett, LaFace, Richard & Wiser, Tallahassee, for appellant.
Bill A. Corbin, Blountstown, and L. Charles Hilton, Jr., Panama City, for appellee.
ERVIN, Judge.
Baxter's Asphalt and Concrete, Inc., appeals a final judgment which inter alia granted appellee Gulf's motion to dismiss and dissolve a temporary injunction entered by the trial court on May 5, 1980, which had prevented appellee Liberty County from awarding a public contract to Gulf. The judgment also denied Baxter's motion to amend its complaint. We reverse.
In April, 1980, appellee Liberty County advertised for bids on road resurfacing. An "Information for Prospective Bidders" was provided to each bidder by the county which included:
NOTE: Bidder must bid for both resurfacing alternatives ALT(A) and ALT(B) for a valid bond.
Alternate "A" called for a better and more expensive grade of asphalt than alternate "B". The appellee, Gulf, did not bid on alternate "A" because the county inadvertently failed to send Gulf the last page of the instructions which included the above quoted requirement. The prospective bidders were also provided with "Instructions to Bidders" which included the following provision:
Proposals will not be listed as "irregular" and will not be considered in the tabulation of bids if they were incomplete in any of the following forms at the time the proposals are removed from the sealed envelopes at bid openings:
(1) Proposals must show a total amount bid in the separate space provided *463 in the title page. [emphasis in original]
"The Information to Bidders" also provided:
(6) WAIVER OF TECHNICAL FLAWS IN BID:
The board reserves the right to waive technical flaws or minor deficiencies in the preparation of the bid, wherever such technicality is obviously to the best interest of the Board.
Appellee, Gulf, submitted the lowest bid for alternate "B". Baxter's submitted the next lowest bid for alternate "B" which was about $148,000 greater than Gulf's proposal. Baxter's submitted the lowest bid on alternate "A", which was $187,000 greater than appellees' proposal on alternate "B". The bidders were also required to include within their bid proposal a guaranteed deposit or surety bond in the amount of 5% of the total actual bid. The county ignored Gulf's failure to bid on alternate "A" and awarded Gulf the contract. The appellant then filed a complaint for injunctive relief challenging the award of the contract on the grounds that Gulf's proposal did not comply with the bidding requirements. Baxter's later sought to amend its complaint by alleging in the proposed amended complaint that the county had not complied with Chapter 336, Florida Statutes (1979), and that the bidding process was unfair. The trial court denied the motion to amend and rendered a final judgment for appellees based largely on its findings that no showing of fraud or unfairness in awarding the contract had been established.
We agree with the trial court's finding that the record does not establish evidence of favoritism, fraud, or misconduct on the part of the county commissioners or Gulf during the course of the bidding process. Normally, such a showing is necessary to enjoin an award of a public contract. See Wester v. Belote, 103 Fla. 976, 138 So. 721 (1931). Cf. Wood-Hopkins Contracting Company v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978). Nevertheless, injunctive relief may be granted if there is alleged "a clear violation of the statute relating to competitive bidding" even in the absence of any "allegation of ... fraud or misconduct on the part of the county commissioners... ." Wester v. Belote, supra, 138 So. at 726.
Here, Gulf's failure to comply with the bid specifications constituted a clear violation of the competitive bid statute applicable here, Section 336.44, Florida Statutes (1979),[1] in that the deviations in Gulf's bid were material. See Harry Pepper & Assoc. v. City of Cape Coral, 352 So.2d 1190 (Fla.2d DCA 1977). The court in Harry Pepper & Assoc., cited 64 Am.Jur.2d, Public Works & Contracts, § 59 (1972), for the following proposition: "The test for measuring whether a deviation in a bid is sufficiently material to destroy its competitive character is whether the variation affects the amount of the bid by giving the bidder an advantage or benefit not enjoyed by other bidders." Id. at 1193.
City of Miami Beach v. Klinger, 179 So.2d 864 (Fla. 3d DCA 1965), is the Florida case that has the closest factual similarity to the case at bar and is the most illustrative as to the problem of non-conforming bids. In Klinger, a successful bidder added an alternate in his bid which was not called for in the specifications. The other contractors submitted bids which conformed to the specifications. The alternate proposal in the nonconforming bid was ultimately accepted. The Klinger court held that the successful bidder's inclusion of the alternate proposal gave him an unfair advantage over other bidders. A New Jersey case, L. Pucillo & Sons v. Mayer & Council, etc., 73 N.J. 349, 375 A.2d 602 (N.J. 1977), is also instructive. There, the Supreme Court of New Jersey disapproved a bid which had been *464 accepted by the Borough of New Milford. The bidders had been requested to submit proposals for garbage collection contracts of one, two and five years' duration. The defendant entered bids on the first three years but failed to submit a bid for the five-year contract. The plaintiff and another bidder submitted proposals on all alternatives as required. Nonetheless, the contract was awarded to the defendant which purported to waive defendant's failure to bid on the fifth year.
The issue before the court was "whether the portion of the bidding specifications which directed garbage scavengers to submit proposals on all options was mandatory or permissive." 375 A.2d at p. 603. As in the instant case, the advertisements to bidders in L. Pucillo & Sons contained underscored, mandatory language which required that all proposals be bid, and a similar provision which read:
The mayor and Council reserves [sic] the right to waive any informalities and the right to reject any and all bids to the best interest of the Borough of New Milford. Id.

In reversing, the Supreme Court of New Jersey emphasized the underscored mandatory language in the advertising to bidders, stating:
We would have no objection to a procedure in which bidders were clearly told that they could select one or several options on which to bid. We are not, however, willing to transform the mandatory requirement in these specifications into a polite request. The ordinary reader of the specifications would regard them as calling for bids on all the terms specified. Awarding the contract to one who failed to submit bids on all terms necessarily created an inequality in the bidding and an opportunity for favoritism.
There is little doubt that Pacio's [the successful bidder] failure to bid on all options was not a minor irregularity which could be waived, [citations omitted] but rather was a substantial departure which could not be overlooked. [citations omitted] Justice Mountain recently formulated the distinction between material and non-material conditions in Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., [67 N.J. 403, 341 A.2d 327] supra:

Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding.
He noted that such requirements must be distinguished from conditions
whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons... . [citations omitted]
The latter category of conditions, he found, "are the kind ... which may not under any circumstances be waived." Id.
375 A.2d 604-605 (emphasis in original).
The New Jersey Supreme Court concluded that the successful bidder's "deviation from the specifications gave him a palpable economic benefit which gave him an advantage over his competitors and undermined the necessary common standard of competition." Id. at 606.
Similarly, in the instant case, Liberty County did not have the option to waive the mandatory requirement that Gulf bid on alternate "A". Gulf conceivably could have gained an unfair bidding advantage by failing to bid on alternate "A". By omitting to bid on alternate "A", Gulf arguably had a lower bonding requirement and arguably was exposed to a lesser financial risk. Gulf's failure to bid on alternate "A" also made the bids difficult to compare  a problem which the competitive bid statutes attempt to eliminate. Wester v. Belote, supra; Robinson's, Inc. v. Short, 146 So.2d 108 (Fla. 1st DCA 1962).
*465 Appellees' endeavors to distinguish L. Pucillo & Sons, Inc., are unavailing. Appellees base their distinction upon the lower court's finding that the two alternates required to be bid were mutually exclusive. Even if this finding is correct, it has no bearing upon the competitive advantages that Gulf may have obtained by its not bidding on one of the required alternates.
Bids on public contracts must conform closely with the published specifications provided in Section 336.44, Florida Statutes, as a prophylactic measure. This position harmonizes with the purpose of the competitive bid statutes as stated in Wester, 138 So. at 724:
[T]hey thus serve the object of protecting the public against collusive contracts and prevent favoritism toward contractors by public officials and tend to secure fair competition upon equal terms to all bidders, they remove temptation on the part of public officers to seek private gain at the taxpayers' expense, are of highly remedial character, and should receive a construction always which will fully effectuate and advance their true intent and purpose and which will avoid the likelihood of same being circumvented, evaded or defeated.
Accordingly, the appellant's motion to amend his complaint, which contained allegations that the competitive bid statute had been violated, should be granted. Appellant further contends that this case should ultimately result in its being awarded the contract. While this option appears to be available, see Harry Pepper & Assoc., supra, we feel that such a result would be inequitable in this case since Gulf's failure to bid was due to no fault of its own but was due to the county's inadvertence. The only apparent equitable remedy is for the county to start anew and readvertise the bids as was directed in L. Pucillo & Sons, Inc., supra.
Reversed and remanded for further proceedings consistent with this opinion.
BOOTH and JOANOS, JJ., concur.

ON PETITION FOR REHEARING
ERVIN, Judge.
All parties have moved for rehearing and assert among other things that the remedy we fashioned in our earlier opinion, requiring Liberty County to readvertise the contract for further bidding, is now moot because Liberty County allowed appellee Gulf to complete the construction of the roadway pursuant to the contract during the pendency of this appeal. Without receding from the reasoning in our earlier opinion, we agree that the remedy there stated is now moot.
Another panel of this court had earlier denied appellant's request to stay the construction on the contract until the appeal was decided on the merits. In all fairness to that panel, the denial of that request for stay was decided on the basis of a very limited record. Such a stay would have been equivalent to the granting of a temporary injunction. Temporary injunctions are granted sparingly and only if eventual success on the merits is probable. See Department of Business Regulation, Division of Alcoholic Beverages and Tobacco v. Provende, Inc., 399 So.2d 1038 (Fla. 3d DCA 1981). Also, the earlier panel did not have the benefit of the briefs which we used for guidance in reaching our decision, and probably were not cognizant of the landmark New Jersey case, L. Pucillo & Sons v. Mayor & Council, 73 N.J. 349, 375 A.2d 602 (1977), which the appellant cited and relied heavily upon in its briefs. Because we adopted that out-of-state authority to resolve a case of first impression in our original opinion, it hardly could be said that the posture of the appeal when reviewed by the earlier panel would have led it to the conclusion that success on the merits at that time was apparent.
Recognizing that its previous remedy has been frustrated, the appellant now maintains that it should be able to recover damages based on the theory of promissory estoppel measured by its loss of profits from not being awarded the contract. If it is precluded from seeking damages, appellant *466 contends that it would suffer a legal wrong without a remedy in violation of Article I, Section 21, of the Florida Constitution (1968). Appellant also contends that such a remedy is warranted because public bidders are in the best position to prosecute violations of the public bidding statutes which were intended to protect the public interest.
It has long been recognized that if the equitable relief cannot be granted due to the defendant's wrongdoing, a court may award monetary compensation in lieu of the equitable remedy. Winn and Lovett Grocery Co. v. Saffold Bros. Produce Co., 121 Fla. 833, 164 So. 681 (1935); Beavers v. Conner, 258 So.2d 330 (Fla. 3d DCA 1972). Persuaded by these principles, we hold that the doctrine of promissory estoppel applies to the facts of this case. However, for equally strong, equitable, and policy reasons, we limit appellant's recovery to its consequential and "reliance" damages which may include litigation expenses, and attorney's fees.
The doctrine of promissory estoppel has previously been recognized as the basis for recovery in Florida.[1]See Allen v. A.G. Edwards & Sons, Inc., 606 F.2d 84 (5th Cir.1979); Mount Sinai Hospital of Greater Miami, Inc. v. Jordan, supra, fn. 1. That doctrine has yet to be applied in Florida to a situation involving public bidding. We have previously recognized that a bidder who once had its bid accepted by a governmental entity, but was later rejected in favor of another bidder, can sue the governmental entity for breach of contract. Wood-Hopkins Contracting Co. v. Roger J. Au & Son, Inc., 354 So.2d 446, 448 (Fla. 1st DCA 1978). However, that theory is inapplicable here because the appellant's bid was never accepted by Liberty County. We are also aware of the holding in William A. Berbusse, Jr., Inc. v. North Broward Hospital District, 117 So.2d 550 (Fla. 2d DCA 1960), stating that damages cannot be awarded to a rejected bidder (whose bid had never been accepted) even if there had been a violation of the competitive bid statute on the part of the governmental agency. Nevertheless, the Berbusse holding was based on its rejection of the specific types of contractual and tort theories for recovery advanced by the rejected bidder. Its opinion did not discuss the doctrine of promissory estoppel, which has been broadened substantially in its application since the rendition of that opinion. See supra, fn. 1.
Swinerton v. Walberg Co. v. City of Inglewood, 40 Cal. App.3d 98, 114 Cal. Rptr. 834 (1974), is instructive. There the governmental authority failed to award a contract to the lowest bidder in violation of statutory requirements. As in the instant case, the contract had already been completed by the time the case reached the appellate court. The court rejected the low bidder's tort and contract theories of recovery, but it recognized that the rejected bidder could recover against the public authority under a theory of promissory estoppel based on Section 90 of the proposed Restatement of Contracts 2d (Tentative Drafts Nos. 1-7 (1973)).[2] In so holding, the court found that the public entity by soliciting bids promised that the contract would be awarded to the lowest possible bidder, and that the rejected bidder reasonably and detrimentally relied on that promise.
*467 The public authority in Swinerton advanced the following arguments that a cause of action could not be recognized against it because (1) the competitive bid requirements on the contracts for public works existed to protect the public rather than the bidders; (2) the injunctive relief that the rejected bidder had obtained earlier was granted solely to protect that public interest, and (3) the rejected low bidder could not have compelled the governmental authority to award the contract to it due to a provision in the notice soliciting bids that any and all bids might be rejected. In discarding these arguments the court stated:
It seems to us that the injustice to Argo, [the low bidder] the promisee, can be avoided only by at least the partial enforcement of [the governmental authority's] promise to it to award the contract to it as the lowest responsible bidder. As we have already stated earlier, [the low bidder's] reliance upon this promise was both reasonable and detrimental to it. To hold that the [low bidder] was not entitled to rely upon this promise because of the just-mentioned reservation of the right to reject any and all bids would make the [governmental authority's] promise an illusory one and render the whole competitive bidding promise nugatory... . The public obviously has both an economic and moral interest in public works contracts being awarded to the lowest responsible bidders. An award of monetary damages to the lowest responsible bidder for the misaward of a public works contract would be in the public interest as well as that of the injured bidder because such an award would deter such misconduct by public entities in the future.
40 Cal. App.3d 104, 114 Cal. Rptr. 838.
We adopt the above-reasoning and apply it to the facts in the instant case. Although the appellant submitted the second lowest bid on alternate "B", the appellant technically was the lowest responsible bidder because appellee Gulf's bid did not comply with the competitive bid statutes. See Harry Pepper & Assoc. v. City of Cape Coral, 352 So.2d 1190 (Fla. 2d DCA 1977). Also, appellant detrimentally relied on Liberty County's implied promise to comply with the competitive bidding statutes by its solicitation of bids and, as a result of such reliance, no doubt incurred costs in preparing its bids as well as other "reliance" damages.
We also consider that any damages, including reasonable costs and attorney's fees incurred as a result of this action, should be awarded only against Liberty County. Here, the appellant probably would not have been involved in litigation with appellee Gulf, if appellee, Liberty County, had properly sent the last page of bidding instructions to Gulf. Where the wrongful act of the defendant has involved the claimant in litigation with others, and has placed the claimant in such relation with others as makes it necessary to incur expenses to protect its interests, such costs and expenses, including reasonable attorney's fees upon appropriate proof, may be recovered as an element of damages.[3]Port Everglades Authority v. R.S.C. Industries, Inc., 351 So.2d 1148 (Fla. 4th DCA 1976); Canadian Univ. Ins. Co. v. Employer's Surplus Lines Insurance Co., 325 So.2d 29 (Fla. 3d DCA 1976); Milohnich v. First National Bank of Miami Springs, 224 So.2d 759 (Fla. 3d DCA 1969).
However, we will not allow appellant's recovery to extend to its purported loss of profits that it expected to receive from the public contract. In Swinerton, supra, the court suggested that such an extension was probably improper as an equitable measure of damages in that particular case, citing 1A Corbin, Contracts § 200 (1963) (stating that damages recoverable in certain types of promissory estoppel cases should be limited to those which the promisee sustained directly by reason of its justifiable *468 reliance upon the promise). The court bolstered its belief by noting that the last section of Section 90 of the Restatement of Contracts 2d provides that "the remedy granted for the breach may be limited as justice requires." 114 Cal. Rptr. at 838. Although Swinerton strongly intimated that the frustrated promisee should be permitted only those damages which "it incurred in its fruitless participation in the competitive bidding process ...", id. 114 Cal. Rptr. at 838, 839, the appellate court left the proper measure of damages to the trial court to determine.
The appellant also correctly cites Signal Hill Aviation Co., Inc. v. Stroppe, 96 Cal. App.3d 607, 158 Cal. Rptr. 178 (1979), as authority for its position that a loss of profits, in some circumstances, can be recovered under a theory of promissory estoppel. However, Stroppe involved a suit brought by a corporation against a corporate officer for the latter's breach of a promise to execute a lease assignment to the corporation. The Stroppe court recognized that Swinerton suggested that the rejected bidder should not recover its loss of profits, but noted that in other cases loss of profits are recoverable under the doctrine of promissory estoppel when the loss is definite rather than speculative. 158 Cal. Rptr. at 186. Stroppe also commented on the flexible nature of the doctrine of promissory estoppel and sanctioned "the exercise of judicial discretion in promissory estoppel cases to fashion relief to do justice." Id. In affirming the lower court's award for loss of profits, the court also stressed the equitable nature of the award below, characterizing it "`more like an accounting between parties than like an assessment of damages.'" Id.
Stroppe, then, is distinguishable from the instant case as the latter case involves public bidding. We consider that it would be unjust to allow a recovery for loss of profits based on the theory of promissory estoppel due to a violation of a public bidding statute. "`Such a statutory provision, enacted as a protection to the public, cannot be used to make disobedience to its provisions by public officers a double source of punishment to the public body... .'" William A. Berbusse, Jr., Inc. v. North Broward Hospital District, supra, at p. 552 (citing to 43 Am.Jur. Public Works and Contracts, § 65).
Finally, appellant argues in its supplemental brief that the appellee should be estopped from asserting that profits cannot be recovered on rehearing because appellees initially took the position, at the proceedings below and in their initial brief, that appellant should be denied the injunction because it had an adequate remedy at law. We are not persuaded by that argument, however, since appellant took the opposite position that the injunction should have been granted because appellant did not have an adequate remedy at law. We agreed with appellant's position in our original opinion; therefore, if appellant had in fact a full contractual recovery, including its loss of profits, appellant would have been considered to have had an adequate remedy at law, and we would not have directed the remedy of readvertisement.[4]
Accordingly, we reverse and remand with directions that appellant be allowed to amend its complaint in order to allege such damages as are consistent with this opinion, and that a hearing be held to determine the proper amount of damages to be awarded against Liberty County.
BOOTH AND JOANOS, JJ., concur.
NOTES
[1] We construe Sections 336.44(2) and (3), when read together, as preventing county commissioners from accepting bids which deviate materially from published specifications. Subsection (2) conditions the letting of a contract upon prior "publication of notice for bids containing specifications..." Subsection (3) conditions the letting of a contract "upon [the acceptance of] a satisfactory bid." Hence, we conclude that a bid that materially differs from published specifications is not a "satisfactory bid" within the meaning of the statute.
[1] Initially, the courts in this state took a limited view that the doctrine only applied in those cases where a promise was made with respect to an intended abandonment of existing rights. See Southeastern Sales & Service Co. v. T.T. Watson, Inc., 172 So.2d 239 (Fla. 2d DCA 1965). However, the application of that doctrine has been broadened to situations where a "`promisor [makes] a promise which he should reasonably expect to induce action or forebearance of a substantial character on the part of the promisee.'" Mount Sinai Hospital of Greater Miami, Inc. v. Jordan, 290 So.2d 484, 486 (Fla. 1974) (e.s.).
[2] That reworded version of Section 90 reads:

A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
[3] The above rule is an exception to the general rule that attorney's fees are not otherwise recoverable as costs in the absence of statutory authority or contractual agreement. See Miller v. Colonial Baking Co., 402 So.2d 1365 (Fla. 1st DCA 1981).
[4] The limited recovery we now allow on rehearing is monetary relief incidental to a court's equitable jurisdiction. See Circle Finance Co. v. Peacock, 399 So.2d 81 (Fla. 1st DCA 1981). A remedy that affords only partial relief is not an adequate remedy at law. See Milton v. Marianna, 107 Fla. 251, 144 So. 400 (1932).