NIMMONS, Judge.
This is an appeal from a summary judgment granted the plaintiffs/appellees in an injunctive suit brought against the defendants/appellants to enjoin appellants from recording any deed restrictions as to certain subdivision lots which would conflict with an alleged agreement entered into in 1974 between appellees and appellants regarding the square footage of any buildings constructed on such lots. For the reasons set forth herein, we reverse the summary judgment.
In 1955, certain restrictive covenants were placed of record covering a Leon County subdivision known as “Meridian Meadows.” James A. Dorsey (not appellant James A. Dorsey) and appellant Russell A. Dorsey were two of the five owners of the subdivision when the owners executed and recorded the 1955 restrictive covenants which are effective, by their terms, until 1990.
Appellants James A. Dorsey, Carol D. Coleman and Jean D. Hoechst are the heirs at law of James A. Dorsey, deceased. They, together with appellant Russell A. Dorsey, are the present owners of certain of the Meridian Meadows lots which are the subject of the instant suit.
The 1955 restrictions provided for minimum square footage of 1,000 feet for any dwelling to be constructed in the subdivision. The covenants expressly provided for authority of any lot owner to prosecute any proceedings at law or equity in the event of any violation or attempted violation by the covenants’ signatories, their heirs or assigns. The covenants also provided for a committee (hereafter “the Committee”) whose responsibility would be to review for approval building plans and specifications as to conformity and harmony of external design with existing structures in the subdivision and as to location of the building with respect to topography and finished ground elevation. The Committee was also empowered to change or vary set back lines specified in the covenants. The Committee had no other responsibilities than those specified. The covenants did not purport to empower the Committee to act for the lot owners in such matters as modifying the above-referred building square footage requirement.
Appellants conceded in the trial court that the appellees constitute the majority of the present Committee. Appellant Russell Dorsey is the other member of the Committee.
In 1974, Russell Dorsey was desirous of selling one of his lots to a prospective purchaser, Mrs. Hendry, who was willing to purchase only if she would be allowed to build a “barrel” home (sometimes referred to as “Alpine” type construction), an architectural design which the Committee regarded as not in conformity with the predominant subdivision architecture. Nevertheless, the Committee agreed to approve the proposed construction if Russell Dorsey would agree to raise to 2,000 square feet the square footage building minimum applicable to certain of the remaining lots owned by him and the James A. Dorsey heirs. In a letter dated February 7, 1974, to the attorney for the Committee, Russell Dorsey stated inter alia:
Lots 11 and 12 (east of Seabrooks) are to have a minimum of 1500 feet. All other lots sold by me from now on are to have a 2000 foot minimum. I say “by me” because, of course, I have no control over lots sold previously. The “by me” also includes sales by the estate, or by any real estate company or individual.
*1019 Subsequently, the Committee approved the proposed plans for Mrs. Hendry’s barrel house and the home was constructed. However, nothing was placed of record purporting to raise the square footage to 2,000 feet on the subject lots until a document entitled “restrictive covenants” was recorded two years later in May, 1976. It was executed by each of the four appellants. Although it provided for a minimum square footage of 2,000 feet for the subject lots, nothing in the document indicated any relationship between it and Russell Dorsey’s agreement two years earlier.
The following year, in 1977, the appellants purported to again modify the square footage restrictions applicable to the subject lots by executing and recording another document entitled “restrictive covenants” reducing the square footage for structures built on such lots to 1500 square feet.. The Committee first became aware of this new change in 1979 when two purchasers of lots from Russell Dorsey presented building plans to the Committee. The plans were rejected by the Committee because they provided for floor plans of less than 2,000 square feet. These two purchasers, Messrs. Tyre and Wetherington, then filed suit for declaratory judgment against the Committee in the Circuit Court in Leon County seeking a determination as to the applicability to them of the 1976 and 1977 restrictions. The Committee sought to enforce the 1976 restrictions providing for a 2,000 square foot minimum while Tyre and Wetherington relied upon the 1977 1,500 square foot restrictions. Judge Cawthon was the trial judge in that case as in the instant suit. Judge Cawthon’s declaratory judgment in the Tyre and Wetherington case, among other things, ruled: (1) that in the absence of provision in the original 1955 restrictive covenants for modification of the restrictions, only by unanimous consent of all existing lot owners could the building square foot minimum be changed; (2) that some of the Committee members were aware of the 1977 modifications but took no steps to put the public on notice of the Committee’s position that such modifications were ineffective; (3) that the Committee had no right to expect Tyre and Wetherington to be bound by the 1976 document without their also having the right to rely upon the reductions contained in the 1977 recorded document; (4) that although neither the 1976 document nor the subsequent 1977 document created valid restrictions governing the lots purchased by Tyre and Wetherington, they (Tyre and Wether-ington) were estopped to deny the validity of the 1977 restrictions, the last recorded restrictions included in their deeds providing for the 1500 square foot minimum; and (5) the Committee had no right to reject Tyre and Wetherington’s house plans for alleged nonconformance with the 1976 2,000 square foot minimum requirement.[1] No appeal was taken from the Tyre and Wether-ington judgment which was entered in February, 1980. However, within a month thereafter, the Committee filed the instant suit.
By its injunctive suit, the Committee sought a judgment enjoining appellants from recording any further documents purporting to modify the 1976 restrictions which required the 2,000 square foot minimum, enjoining appellants from conveying any of their lots unless the deed recites that the conveyance is subject to the 1976 restrictions, and striking or expunging the 1977 restrictions which purported to reduce the square foot minimum to 1500 feet. In August, 1982, the trial court entered the order appealed from granting the Committee’s motion for summary judgment. In its order, the trial court found that the 1976 restrictions “were pursuant to a valid agreement and are enforceable by the Corn- *1020 mittee,” and enjoined the appellants from recording any document purporting to modify the 1976 restrictions and from conveying any of the Meridian Meadows lots unless the deed recites that the conveyance is subject to the 1976 restrictions.
Of course, a party moving for summary judgment must show conclusively that no material issues remain for trial. E.g. Visingardi v. Tirone, 193 So.2d 601 (Fla.1967). Based upon the state of the record at the time of the order granting summary judgment, there were genuine issues of material fact to be tried.
The record reveals a material unresolved issue as to whether Russell A. Dorsey was acting as agent for the other appellants in entering into the 1974 agreement to raise the minimum square footage to 2,000 feet. They denied entering into any such agreement with the Committee. Russell Dorsey denied that the other appellants were privy to such agreement.[2] The principal documents relied upon by appellees to prove the agreement are Russell A. Dorsey’s February 7,1974, letter to the Committee’s attorney and his affidavit in opposition to summary judgment. Neither document is sufficient to prove that Russell had actual or implied authority to act as agent for the other appellants (the James A. Dorsey heirs). The only arguable method by which such appellants might be considered to have been bound by Russell’s agreement was the execution and recording of the 1976 document raising the square footage restrictions to 2,000 feet, which act might arguably be regarded as an adoption by such appellants of the agreement, or perhaps as acquiescence in the authority of Russell to bind them. However, the document itself contains no reference to the alleged 1974 agreement or to any other reason for the execution of the document. Moreover, there are no depositions or any other proof of record indicating the reason for the James A. Dorsey heirs’ execution of the 1976 document.
Even if it can be said that Russell’s act of executing the document is sufficiently tied to his 1974 promise, one can only infer that Russell communicated his 1974 agreement to the James A. Dorsey heirs and that they executed the document to satisfy the terms of the agreement. There are, of course, other inferences which could be drawn from the same facts. Suffice it to say that the inference supporting appellees’ position does not measure up to summary judgment standards.
Another factual issue centers around the authority of the Committee to enter into an enforceable agreement of the kind which the Committee seeks to enforce in the instant case. Implicit in the trial court’s summary judgment order finding that the 1974 agreement was a valid agreement is that the Committee was duly authorized to enter into such an agreement purporting to modify the building square footage provisions originally set in place by the 1955 restrictive covenants, covenants which were imposed upon the entire subdivision by all of the then lot owners. Appellees allege in their complaint that the Committee, in entering into the 1974 agreement, was “acting for the benefit of the existing landowners.” The authority of the Committee to enter into such an agreement was challenged by all of the appellants, each of whom have alleged that the Committee’s authority was limited to the specific subjects delineated in the 1955 document, which subjects we have mentioned earlier in this opinion and which do not include modification of the covenants regarding building square footage. Moreover, the appellants deny that the *1021 Committee was representing the interests of all other subdivision landowners when the Committee entered into the 1974 agreement. The Committee failed to demonstrate that there was no genuine issue of material fact with respect to its authority to enter into and enforce the alleged 1974 agreement.
While the trial court’s order granting summary judgment expressly relied upon its finding of a valid enforceable agreement, the Committee relies, in the alternative, on appeal, on the doctrine of promissory estoppel recognized by this Court in Baxter’s Asphalt v. Liberty County, 406 So.2d 461 (Fla. 1st DCA 1981), reversed on other grounds, 421 So.2d 505 (Fla.1982). That doctrine provides that where a promissor makes a promise which the prom-issor should reasonably expect to induce action or forebearance of a substantial character on the part of the promisee and which does induce such action or forebearance, the promise is binding if injustice can be avoided only by enforcement of the promise. Baxter’s Asphalt v. Liberty County, supra; Mount Sinai Hospital of Greater Miami, Inc. v. Jordan, 290 So.2d 484 (Fla.1974). However, the issues of material fact referred to above remain genuine unresolved issues regardless of whether appel-lees rely for affirmance upon a valid enforceable agreement or promissory estoppel.
Appellants also argue on appeal that the trial court should have denied summary judgment because “changed circumstances and frustration of the original purpose of the 1976 restrictions relieved appellants” from being bound thereto, citing in support thereof Carlson v. Kantor, 391 So.2d 342 (Fla. 4th DCA 1980), and Oius v. Barton, 109 Fla. 556, 147 So. 862 (1933). However, such constitutes an avoidance which must be affirmatively pled. Fla.R.Civ.P. 1.110(d). Appellants did not do so and we, therefore, decline to examine the record to determine whether the facts of this case lend themselves to the applicability of that defense.
Finally, appellants argue on appeal that the doctrine of “balancing the relative conveniences of the parties”[3] should have precluded the entry of summary judgment in favor of appellees. Appellees assert that appellants waived the right to rely upon that doctrine since appellants failed to affirmatively plead it in the trial court. In view of our reversal of summary judgment on the points previously discussed, we pre-termit the question of the applicability of this doctrine and whether its proponent must affirmatively plead it.[4]
For the reasons mentioned, the trial court’s order granting appellees’ summary judgment is REVERSED.
LARRY G. SMITH and ZEHMER, JJ., concur.

. This summary of the Tyre and Wetherington suit is included here only for the purpose of clarifying the events leading up to, and which provided the impetus for, the filing of the instant injunctive suit. Excerpts from deposition and trial testimony in the Tyre and Wethering-ton case were submitted in the instant case in support of appellee Committee’s motion for summary judgment. We do not discuss the prior suit by reason of any res judicata contentions by any of the parties hereto, none of the parties having raised res judicata or estoppel by judgment in the trial court.

. The following is an excerpt from Russell A. Dorsey’s testimony:
“By Mr. Beatty:
Q. You do acknowledge that in [sic] your relatives’ executing 2,000 square foot document was the result of an agreement that you had with the Committee that they would approve the Henry barrel house and permit you to sell the lot?
A. No, that is not so.”
Also, Joe Kittrell, a member of the Committee in 1974, testified in part:
The agreement was between the Committee and Mr. R.A. Dorsey, and I assume as spokesman for the heirs of James A. Dorsey — they were not in, they were not present in the discussion.” (emphasis supplied)

. “Situations may exist that require application of the principle of balancing the relative conveniences of the parties, the rule being that equity will not require by injunction the performance of an act where the harm to the person coerced is wholly disproportionate to the benefit to the other party, or, indeed, when greater injury and inconvenience will result to the defendant from an injunction than will be caused to the plaintiff by its refusal.” 29 Fla.Jur.2d Injunctions, Section 23.

. We note that our sister court in Brewer v. Hibbard, 424 So.2d 988 (Fla. 5th DCA 1983), in reversing a summary judgment because “[T]he order requiring removal of the two buildings appears to have been entered without considering the principle of balancing relative conveniences, Johnson v. Killian, 157 Fla. 754, 27 So.2d 345 (1946),” apparently assumed that it was not necessary for the pleadings to raise such issue.