LE CESSE BROS. CONTRACTING, INC., Appellant, v TOWN BOARD OF THE TOWN OF WILLIAMSON et al., Respondents.

Fourth Department, April 14, 1978

### APPEARANCES OF COUNSEL

*Beckerman, Davidson, Cook & Fink (Douglas Gates* of counsel), for appellant.

*Charles J. Dittmar* for Town Board of Town of Williamson, respondent.

*Becker, Card, Levy & Richards, P. C. (Rodney Richards* of counsel), for Murrary Walter, Inc., respondent.

## OPINION OF THE COURT

SIMONS, J.

Le Cesse Bros. Contracting, Inc. initiated this article 78 proceeding seeking an order requiring the respondent Town Board of Williamson to reject the bid of respondent Murray Walter, Inc. for construction of waste-water and sewage treatment facilities for the town. Le Cesse, the second lowest bidder, alleges that the bid of Walter, the low bidder, is defective because it is incomplete and that the town improperly threatens to waive the defect and award Walter the general construction contract.

At issue is the extent to which a municipality may waive a bidder's failure to state, as required by bid instructions, the names of the manufacturers of equipment to be installed in the proposed construction and, alternatively, whether such a specification that equipment manufacturers be stated in the bid is legal. The parties have submitted the matter as one presenting solely questions of law.

. In December, 1977 the town solicited bids for the construction of sewage treatment facilities for Williamson Sewer District No. 1. The proposal called for five different though related contracts, but this proceeding relates only to the general contract which included excavation work and construction of the sewer treatment plant. The instructions to bidders required that bids be made upon prescribed forms and directed that the bid form be fully executed and completed when submitted with all blank spaces filled. Page 2A of the bid form stated that all bidders "must provide the following information". Thereafter were listed various items of equipment, pumps and sewage treatment units, each followed by a blank line upon which the bidder was directed to list the manufacturer's name. The bidder was advised to list one name only for each item. The purpose of this listing, as explained in the record, was to avoid delay in the construction by providing for the selection and approval of the equipment at the inception of the contracts.

The specifications on pump manufacturers stated: "Pumps described and shown are products of Flygt Corporation. Products of alternate manufacturers such as Enpo-Cornel, Hydromatic, Midland, Peabody Barnes or Pollution Equipment will be approved as equivalent, provided that alternate equipment meets all substantial requirements of the specifications." The specifications on treatment facilities stated: "Treatment Facili-

ties furnished under this specification shall be the standard product of a responsible manufacturer who is fully qualified in the production on the specified equipment." In addition, the general contract conditions, applying to all construction and included as part of the specifications, provided that where equipment was listed by brand name in the specifications the contractor could recommend the substitution of "equipment of equal substance and function for those referred to in the contract documents by reference to brand names." If the engineer determined that the proposed equipment was equal, he could approve its substitution.

Le Cesse supplied the names of proposed manufacturers in its bid. Flygt was not the manufacturer it listed for the various pumps and in some instances Le Cesse listed pump manufacturers other than those identified as acceptable alternatives in the specifications. Walter did not list its proposed manufacturers. Written across the blank lines on the Walter bid was the notation that the manufacturers were "not known at this time". When the bids were opened, Walter was the apparent low bidder on the general contract with a bid of $1,994,000 and Le Cesse was next lowest with a bid of $2,017,-000. When the town realized that Walter had failed to complete the list of manufacturers, it requested that it do so and Walter supplied the information within 24 hours.

The letting of public contracts is governed by the provisions of article 5-A of the General Municipal Law which requires that municipal public works projects be submitted to open competitive bidding. These statutes were designed with the dual purposes of fostering honest competition in order that the municipality obtain the best work and supplies at the lowest possible price and also to guard against favoritism, improvidence, extravagance, fraud and corruption *(Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187, 192-193; *Matter of Sweet Assoc. v Gallman,* 36 AD2d 95, 99, affd 29 NY2d 902). The implementation of the statutes is governed by familiar legal rules which are designed to promote these purposes. Thus, the rule is that a municipality may decline bids which fail to comply with the literal requirements of the bid specifications *(Matter of Marsh,* 83 NY 431; *Matter of Southern Steel Co. v County of Suffolk,* 29 AD2d 662; *Matter of Rockland Haulage v Village of Upper Nyack,* 13 AD2d 819; and see *Matter of Atlantic Tug & Equip. Co. v Town of Tonawanda,* 45 AD2d 916), or it may waive a technical non-

compliance with bid specifications if the defect is a mere irregularity and it is in the best interests of the municipality to do so *(McCord v Lauterbach,* 91 App Div 315; *Matter of Gottfried Baking Co. v Allen,* 45 Misc 2d 708, 710 [COOKE, J.]; 10 McQuillin, Municipal Corporations [rev ed], §§ 29.65, 29.68). Where the variance between the bid and the specification is material or substantial, however, the defect may not be waived and the municipality must reject the bid so that all bidders may be treated alike and so that the possibility of fraud, corruption or favoritism is avoided *(Matter of Gottfried Baking Co. v Allen, supra; Matter of Glen Truck Sales & Serv. v Sirignano,* 31 Misc 2d 1027, 1030 [HOPKINS, J.]). Finally, when essential information is missing from a bid at the time of opening, it may not later be supplied by a private understanding between the bidder and the municipality or otherwise *(Matter of Glen Truck Sales & Serv. v Sirignano, supra).*

Central to this appeal is the determination of whether the variance from the specifications in Walter's bid was material, i.e., did its failure to list manufacturers affect the competitive character of the bidding and give Walter a substantial advantage or benefit not enjoyed by the other bidders (see *Matter of Gottfried Baking Co. v Allen, supra,* p 710; *Matter of Glen Truck Sales & Serv. v Sirignano, supra,* p 1030). In similar cases in which there has been a variance between the bid and the specifications it has been held that a municipality may not permit a bidder who supplied a price contingent upon payment by installments before delivery to correct his bid to conform to the specification requiring a price for payment on delivery *(Matter of Sanford Fire Apparatus Corp. v Board of Fire Comrs.,* 81 Misc 2d 992); that a bidder who supplied a price for school buses may not modify his bid to provide an additional bus at no cost in order to conform to the specification requiring a certain total seating capacity *(Matter of Rockland Bus Lines,* 15 Ed Dept Rep 40); and that a letter advising the municipality that the bidder was prepared to lease real property for a dump did not comply with a specification requiring that bidders on a proposed garbage contract must include in the bid proof of bidder's written lease of a dumping ground *(Tufano v Borough of Cliffside Park,* 110 NJL 370). It has also been held that a variance by the owner changing the size of baking products to be supplied by the bidder without the knowledge of other bidders is material *(Matter of Gottfried Baking Co. v Allen,* 45 Misc 2d 708,

*supra).* Conversely, it has been held in the following cases that no unfair competitive advantage is created and therefore that a municipality may waive a variance concerning: the failure to file a certificate of noncollusion with the bid *(Matter of Consolidated Sheet Metal Works v Board of Educ.,* 62 Misc 2d 445); the failure to submit a certified check as security and accept instead a bond *(Matter of Stage v Whitehouse,* 43 Misc 2d 703); the failure to post required security, where the omission was promptly cured *(Nowak Constr. Co. v County of Suffolk,* 233 NYS2d 627), and the failure to submit required proof of financial responsibility *(Matter of Harran Transp. Co. v Board of Educ.,* 71 Misc 2d 143; see, also, *McCord v Lauterbach,* 91 App Div 315, *supra).*

Le Cesse contends that the variance in Walter's bid did result in an unfair competitive advantage to Walter for two reasons. First, it is said that by failing to complete the bid form, Walter's placed itself in a position to accept or not accept the contract after it had knowledge of the other bids. It is alleged that it could do so by the simple expedient of listing manufacturers acceptable or unacceptable to the town's engineers. If its bid was low, the argument goes, Walter could complete the list with manufacturers willing to supply the equipment at prices profitable to Walter and if the manufacturers were not acceptable to the town, Walter could withdraw its bid without penalty.

We think not. A bid is an offer to contract, binding on the bidder for 45 days after opening or until it is earlier accepted or rejected by the municipality *(Balaban-Gordon Co. v Brighton Sewer Dist. No. 2,* 41 AD2d 246, 247). Once the bid was accepted by the town, Walter was bound to proceed with the construction in accordance with the specifications (see *Hendricks v City of Minneapolis,* 207 Minn 151). It could not frustrate the bargain by insisting on supplying equipment that was not approved by the town's engineers without forfeiting its bond or subjecting itself to damages.

Second, Le Cesse contends that Walter enjoyed a competitive advantage by not committing itself to specific manufacturers until it was revealed publicly as the apparent low bidder. With the advantage of that position, it claims Walter could negotiate with manufacturers for a more favorable price. The town answers that Walter did not enjoy any advantage as a result of this because none of the bidders was "wedded" to the manufacturers listed in its bid. Each was free to negotiate

with other manufacturers for a more favorable price on the equipment after winning the bidding.

It is true that the possibility of renegotiation after the bid opening was available under the terms of the contract. Nevertheless, Le Cesse, following instructions, estimated its bid by soliciting prices from manufacturers without assurance that it would in fact be the successful contractor and price negotiations at this state of the proceedings necessarily took place in a different atmosphere from negotiations conducted after the bids were opened and success assured. Le Cesse may have had the contractual right to substitute after the bidding, but it was already committed to certain manufacturers, at least tentatively, and as a practical matter having become so committed, its bargaining position with the town and with the manufacturers was seriously weakened if it later proposed a change. The greater latitude enjoyed by Walter in this respect put it in a far more favorable position than its competitors, an advantage it should not be permitted to achieve by ignoring the bid instructions (see, e.g., *Belousofsky v Board of Educ.,* 54 NJ Super 219 [low bidder submitted an "equal" without identifying model]; *Druml Co. v Knapp,* 6 Wis 2d 418 [listing subcontractors in alternative]). As one court has stated, "[E]very element which enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant to follow or to disregard and thus to estimate his bid on a basis different from that afforded the other contenders" *(Township of Hillside v Sternin,* 25 NJ 317, 322-323).

Furthermore the town should be foreclosed from waiving Walter's variance, not only because to do so would give Walter an unfair advantage, but because the omission in the bid ran counter to the town's purpose in using the specifications to avoid delay and uncertainty in the approval of equipment manufacturers, and also because such variances lessen the public confidence in the bidding process, discourage future competition, and may offer the opportunity for manipulation and evasion of the statutory requirements (see *Matter of Warren Bros. Co. v Craner,* 30 AD2d 437, 439-440; *Matter of Harran Transp. Co. v Board of Educ.,* 71 Misc 2d 139, 143, supra). The bidding statutes are enacted for the benefit of property holders and taxpayers, not for the benefit or enrichment of bidders. They should be " 'so construed and administered as to accomplish such purpose fairly and reasonably

*with sole reference to the public interest'* (10 McQuillin, *op. cit.,* § 29.29, p 322; emphasis added)" *(Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187, 193, *supra).*

 Finally, Le Cesse alleges alternatively that the requirement that equipment manufacturers be identified in the bid is illegal. The general specifications listed six suggested pump manufacturers and provided generally for the substitution of equipment of unnamed manufacturers of equal quality with the approval of the engineer. The town required inclusion of this information in the bid for the reasonable purpose of avoiding delay and in the absence of proof in the record that the requirement unlawfully restricted competition when enforced, we do not find it illegal (cf. *Gerzof v Sweeney,* 16 NY2d 206; *Matter of Resco Equip. & Supply Corp. v City Council of City of Watertown,* 34 AD2d 1088; *Matter of Warren Bros. Co. v Craner,* 30 AD2d 437, *supra).*

The judgments dismissing the petitions should be reversed and respondent town should be stayed from accepting respondent Walter's bid.

MARSH, P. J., CARDAMONE, DENMAN and WITMER, JJ., concur.

Judgments unanimously reversed, on the law, with costs and petitions granted in accordance with opinion by SIMONS, J.