■ In the Matter of CATARACT DISPOSAL, INC., Appellant, v TOWN BOARD OF THE TOWN OF NEWFANE et al., Respondents.—Judgment reversed, with costs, and petition granted, in accordance with the following memorandum: In 1978 the Town Board of the Town of Newfane advertised for bids for a three-year garbage collection contract. Among the specifications in the proposed contract was the requirement that the successful bidder provide a performance bond. The low bidder was J. & I. Disposal, Inc., and that company was awarded the contract even though it was unable to secure a performance bond. Cataract Disposal, Inc., was the only bidder able to provide the required performance bond and has brought this proceeding to rescind the contract. When it was awarded the contract J. & I. Disposal was allowed to substitute a cash indemnity bond for the performance bond. Thus, the terms of the final contract were not identical to the proposed contract as advertised in the notice to bidders. Conformity to the advertised specifications is not an absolute requirement. Some variance is allowed provided it is not material or substantial. Technical noncompliance or a mere irregularity may be waived by the municipality where it is in the municipality's best interest to do so (Le Cesse Bros. Contr. v Town Bd. of Town of Williamson, 62 AD2d 28, affd 46 NY2d 960). A variance is material when it gives one bidder a substantial benefit or advantage not given to other bidders or potential bidders (Matter of Glen Truck Sales & Serv. v Sirignano, 31 Misc 2d 1027, 1030). Here the substitution of the cash indemnity bond for the performance bond was a material and substantial variance. The variance created an unfair competitive advantage for J. & I. Disposal. This is true not only because other possible bidders had to consider the cost of acquiring a performance bond when calculating their costs, but also because other possible bidders not able to secure a performance bond and not aware other forms of security were acceptable, may have been dissuaded from bidding. A variance from a specification that determines eligibility to bid must be considered substantial and material (Terminal Constr. Corp. v Atlantic County Sewerage Auth., 67 NJ 403, 412). Of course, a cash indemnity bond is an acceptable form of security. Indeed, there is some authority that a cash indemnity bond provides more security than a performance bond (33 Op St Compt 55). And it would have been proper for the town to have accepted a bid substituting a cash indemnity bond had the notice to bidders informed all potential bidders that alternative forms of security would be considered. The Comptroller's Opinion relied on by the dissenters does not state that one may be substituted for another when, as here, the bid specifications specify only one form of security. The distinction is particularly significant in this case where the night before the bid specifications were sent out a request was made to the town by the garbage contractors to eliminate the performance bond requirement. The request was considered and turned down. Therefore, once the bid specifications were

circulated to potential bidders a performance bond became "the required security" under subdivision 1 of section 103 of the General Municipal Law and could not be varied by the contractor at its own option. Nor does the statement in the proposed contract that "The bid award will be based on the low bid plus alternates", authorize such a substitution. Although it is proper for a municipality to seek bids on alternative plans or materials, such alternatives must be reasonably defined in the specifications so that the bidders are not deprived of a common basis for bidding (64 Am Jur 2d, Public Works and Contracts, § 52; 10 McQuillin, Municipal Corporations [rev ed], § 29.29). The addition of the word "alternates" in the proposed contract did not inform bidders that substitution of the cash indemnity bond for the performance bond would be permitted. As a result, the common standard necessary to serve as a basis for competitive bidding was lacking. The vice of permitting a bidder to substitute required security is real. Sound public policy is embodied in the General Municipal Law which provides for open competitive bidding on public contracts. To guard against favoritism, extravagance and corruption the requirements of article 4 of the statute should be rigidly adhered to (see *Township of Hillside v Sternin,* 25 NJ 317). All concur, except Dillon, P. J., and Witmer, J., who dissent and vote to affirm the judgment in the following memorandum.

Dillon, P. J., and Witmer, J. (dissenting). We would affirm. The town's invitation for bids provided that "The successful bidder shall furnish a performance bond in an amount equal to fifty (50%) percent of the amount of the bid for the first year of the contract". Respondent J. & I. Disposal, Inc., (J & I) submitted its bid on November 7, 1978 in the following annual amounts:

| | |
|---|---|
| 1979 | $ 76,800 |
| 1980 | 82,100 |
| 1981 | 87,800 |
| Total | $246,700 |

The bid stated that an insurance company would not write a bond for respondent on this type of contract, and it proposed that the town allow J & I to post a cash bond for an amount suitable to the town. The bid submitted by petitioner was as follows:

| | |
|---|---|
| 1979 | $ 97,000 |
| 1980 | 105,000 |
| 1981 | 113,000 |
| Total | $315,000 |

In its bid petitioner offered to submit a proper performance bond. A year and a half before these bids were made, the State Comptroller had rendered his opinion that when bids are let pursuant to subdivision 1 of section 103 of the General Municipal Law, which requires that the bid be let to a responsible bidder "furnishing the required security", cash may be accepted by the municipality as security for the performance in lieu of a performance bond. The Comptroller wrote, "We are aware that custom normally dictates that the performance bond should be in the form of a surety company bond. However, no statute expressly imposes that requirement. Accordingly, it is our view that a low bidder who is able to furnish cash or a certified check or the equivalent thereof is every bit as 'responsible' as the low bidder who can

furnish a surety bond. In fact * * * it stands to reason that the low bidder who furnishes cash or the equivalent thereof is, perhaps, more 'responsible' than the bidder who can furnish a surety bond" (33 Opn St Compt 55). Because petitioner's bid was $57,189 (over 20%) higher than J & I's bid, and respondent town found that J & I was a responsible bidder, it was entirely proper for the town to accept J & I's bid and award the contract to it upon its filing a certified check in the necessary amount, which it did. J & I's offer of cash in lieu of a performance bond should have come as no surprise to petitioner. Even absent the prior ruling by the State Comptroller, it is only "horse sense" that posted cash would be at least the equivalent of a performance bond. By invoking a highly technical reading of the invitation for bids, the majority puts the town in a difficult position. The contract has been in progress for one and one-half years and, with the inflation which has been rampant during that time, the letting of new bids will undoubtedly be much more costly for the town. In our view, the contract need not and should not be interpreted as requiring such result (see *Le Cesse Bros. Contr. v Town Bd. of Town of Williamson*, 62 AD2d 28, 31-33, affd 46 NY2d 960). (Appeal from judgment of Niagara Supreme Court—art 78.) Present—Dillon, P. J., Cardamone, Schnepp, Doerr and Witmer, JJ.