Wachtler, J.
(dissenting). A public bidder for a municipal garbage collection contract who has agreed to furnish a performance bond as required by the announced bidding specifications should not be permitted, after being the successful bidder, to avoid the requirement by posting cash as a substitute.
The acceptance of substitutes, especially cheaper substitutes, after the bidding is over is unfair, not only to other bidders who honestly included the cost of the bond in their estimates, but also to other municipalities which may not be so willing in future cases to accept the unspecified substitute. The contract documents clearly required, under the *275 heading, BID SECURITY AND PERFORMANCE BOND that “The successful bidder shall furnish a performance bond in an amount equal to fifty percent (50%) of the amount of the bid for the first year of the contract” (emphasis added). The respondent was unable to obtain a performance bond and posted a cash indemnity bond instead. Nowithstanding this noncompliance, the municipality awarded respondent the contract.
Petitioner, Cataract Disposal, Inc., initiated this proceeding to cancel the contract. Special Term held that the town acted properly, but the Appellate Division reversed holding that the successful bidder must comply with the bid specifications. Because it must be concluded on this record that the noncompliance is significant, I would affirm.
The competitive bidding statute (General Municipal Law, § 103), in its design to promote competition and discourage favoritism, improvidence, and corruption (see Matter of Exley v Village of Endicott, 51 NY2d 426) contains an inherent disposition towards equal treatment of contractors (see Matter of Glen Truck Sales & Serv. v Sirignano, 31 Misc 2d 1027,1030; see, also, Matter of Gottfried Baking Co. v Allen, 45 Misc 2d 708, 710). The reason for this orientation is apparent; by placing all bidders on the same footing, the municipality receives the benefit of each being given an adequate opportunity to present the lowest possible bid. In this context, then, it is essential for us to determine whether the bid the town accepted varied in any material way from the bid requirements, and if so whether the acceptance of the noncomplying bid placed others at a competitive disadvantage (see Le Cesse Bros. Contr. v Town Bd. of Williamson, 62 AD2d 28, affd 46 NY2d 960).
The difference between a performance bond and a cash indemnity bond cannot be said to be merely a matter of semantics. By insisting on security that in the event of a default a surety will undertake performance, a municipality ensures for itself that the surety, and not the town officials, will be faced with the difficulty of obtaining a reliable substitute garbage collection contractor on short notice. Beyond this, a municipality that insists on a per *276 formance bond issued by a reputable surety company deT rives the benefit, supplementing investigation on its own, of the surety company’s assessment that the contractor to whom such a bond has been issued has demonstrated the financial stability and accounting regularity which a commercial surety would require. A deposit of cash simply cannot provide the same assurance.
It is no answer to state that the discrepancy was not material because the town chose to ignore it. Had the municipality insisted instead on literal compliance, a suit against the municipality by a frustrated bidder who could not obtain the bond would have faced little hope for success, because we would certainly resolve all doubts concerning the materiality of the variation in accord with the preference based on municipal experience as expressed in the bid documents. To now hold that we give equal freedom to a municipality to ignore clearly stated bid requirements fosters the very opportunity for abuse the statute was designed to avoid (see 1A Antieau, Municipal Corporation Law, § 10.54). Under the majority’s holding, technical bid requirements can be enforced or ignored depending on the predelictions of the officials in favor or against a particular contractor.
The majority’s decision to gloss over the contract wording also will serve to inject unnecessary vagueness into the bidding process. To be sure, had the town chosen to specifically exclude any security but a performance bond, no room for argument would remain. The point, however, is that bid documents are not expected to state what is unacceptable, but rather only what actually will be required. To hold otherwise would cause an unacceptable burden and risk in the drawing of bidding documents. Nor should a prospective bidder be permitted to rely on dictionary definitions, as has the majority, rather than the clear wording of the bid documents.
Finally, even if it were to be asserted in the abstract that a cash deposit accompanied by an indemnity agreement might in some instances be the substantial equivalent of a performance bond, that it was not so considered by the Town Board of the Town of Newfane in this instance prior to the opening of the bids is clear beyond any doubt. The *277 night before the bid specifications were sent out a request was made to the town by the garbage contractors to eliminate the performance bond requirement. It appears that this request was prompted by the circumstance that it was the policy of the surety companies operating in the western New York area not to issue performance bonds in connection with municipal garbage collection contracts.[1] The request whs considered and rejected, and the bid specifications still contained the performance bond requirement. Bids were received on November 8. It was only on November 29 when the twon board awarded the contract to J & I Disposal, Inc., that it became known that the town had then decided to accept a deposit of cash in lieu of a performance bond.[2] Not only was this postbid change of position wholly unfair to the bidders which would have thought themselves precluded from bidding; the town and its taxpayers were thereby deprived of the statutorily mandated benefit of open competitive bidding. We cannot know how many bidders were dissuaded from submitting bids in the circumstances. In my view there is no reason to opt for such unfairness and ignore the long-standing rule of adherence to the requirements laid down in the bid specifications (see Le Cesse Bros. Contr. v Town Bd. of Williamson, 62 AD2d 28, affd 46 NY2d 960, supra).
Accordingly, and for the additional reasons stated by the court below, I dissent and vote to affirm the order of the Appellate Division.
Chief Judge Cooke and Judges Jasen and Meyer concur with Judge Gabrielli; Judge Wachtler dissents and votes to affirm in a seperate opinion in which Judges Jones and Fuchsberg concur.
Order reversed etc.

. We are informed that, because of its relation to a parent corporation and the relationship of that parent with an insurance carrier, Cataract Disposal, Inc., was able to obtain a performance bond out of the carrier’s New York City office.

. That J & I Disposal, Inc., had itself interpreted the bid specifications to require a performance bond appears from the fact that its bid stated that it had made unsuccessful efforts to obtain a performance bond and set forth as “Alternative No. 2” — “Waive bonding requirements due to unavailability of same”.