408 So.2d 703 (1982)
ALLIS-CHALMERS CREDIT CORPORATION, Appellant,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Appellees.
No. AC-232.
District Court of Appeal of Florida, First District.
January 11, 1982.
Kenneth R. Hart of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and G.P. Waldbart, Asst. Atty. Gen., Tallahassee, for appellees.
PER CURIAM.
This controversy concerns the apportionment of Allis-Chalmers Credit Corporation's adjusted federal income for taxation under Florida's Income Tax Code, Chapter 220, Florida Statutes. Apportionment is accomplished using a fraction. In the numerator of the fraction are three factors: Florida property, Florida payroll, and Florida sales. The denominator consists of nationwide property, payroll, and sales. The dispute is over whether certain interest income derived from the sale of Allis-Chalmers equipment, financed through Allis-Chalmers Credit Corporation ("ACCC"), is to be included in the apportionment formula as Florida sales. ACCC appeals a final order of the Department of Revenue rejecting the recommended order of the hearing officer and assessing a deficiency against ACCC based on its conclusion that the interest income is includable in the numerator of the fraction as Florida sales. Because we believe the Department improperly rejected the recommended order, we reverse.
The facts were summarized in the recommended order and the final order for the most part as follows:
Allis-Chalmers Credit Corporation is a Wisconsin corporation doing business in Florida. It is a wholly owned subsidiary of Allis-Chalmers Corporation, a Delaware Corporation who manufactures and sells, among other things, farm tractors and other heavy equipment through various dealers.
Taxpayer's principal business is financing the sale or lease of equipment to farmers and others by Allis-Chalmers dealers. All of the income here in dispute was earned in this manner.
This assessment originated following the audit of Taxpayer's records in Wisconsin by an agent of the Department. In reviewing the Taxpayer's records he noted that income received from installment sales in Florida had been included by Taxpayer in computing the Florida Income Tax for 1973 but was not included for the years subsequent thereto.

*704 Prior to 1974 Taxpayer maintained an office in Florida. This office was closed in December 1973 and thereafter all work previously done out of that office was transferred to Atlanta.
During the audit period (1974-1976) Taxpayer was represented in Florida by one employee whose duties were to call on Allis-Chalmers Florida dealers to persuade these dealers to use Taxpayer for financing sales they made, to keep these dealers supplied with necessary forms and to give advice to these dealers if complicated or difficult financing situations arose. This representative worked out of the Atlanta office but lived in Florida, the state for which this representative was responsible.
Buyers of Allis-Chalmers equipment with good credit ratings can generally obtain bank financing at better rates than are offered by Taxpayer. The dealer is not required to assign conditional sales contracts to Taxpayer (via Allis-Chalmers) but is encouraged to do so. Buyers qualifying for financing from Taxpayer were the source of the income upon which the tax here involved was based.
When a dealer sells a piece of equipment on which the buyer wants financing by Taxpayer, the dealer has the retail customer fill out the purchaser's statement and execute three additional forms that are provided by the Taxpayer. Under his franchise agreement with the parent corporation, the dealer is required to use appropriate precautions in conducting financing transactions, to warranty the truth and completeness of statements in the documents and their enforceability, and to repurchase the paper on demand in the event of default. The dealer forwards the executed documents to the Taxpayer's Atlanta branch office for review and approval before any extension of credit to the customer. In Atlanta the Taxpayer's branch manager, acting under a power of attorney from the parent corporation, accepts the documents on behalf of the parent corporation and tenders them to himself as agent for the Taxpayer. If the paper meets the Taxpayer's requirements as to form, terms, execution and credit-worthiness, as defined in the Master Credit Agreement between the parent corporation and Taxpayer, he then accepts the documents on behalf of the Taxpayer. In some instances he conducts a supplemental credit inquiry by mail or telephone to assure the Taxpayer's requirements are met. His acceptance of the documents for Taxpayer constitutes in effect the purchase and receipt of the obligation. The customer receives his financing, and the appropriate credits are transferred from the Taxpayer to the parent corporation to the dealer's inventory account. The dealer receives an additional credit as an incentive to recommend the Taxpayer's financing services to his customers.
The Taxpayer files the signed financing statement with the Florida Secretary of State to protect its security interest under U.C.C. Article 9, and pays the appropriate filing fee. The Taxpayer also files continuation statements in the event the account is extended or refinanced beyond five years.
The customer makes his installment payments reflecting the base price plus a time-price differential or finance charge by mailing the payments to the Taxpayer's Atlanta lock box. The Taxpayer furnishes him coupon books or reminder notices by mail. In the event a customer account becomes overdue, the Taxpayer takes limited enforcement action by issuing dunning letters. The Taxpayer, through its Florida Finance Representative, contacts the delinquent customer by telephone or in person, and arranges in appropriate cases for extensions or refinancing of the initial obligation, using printed forms with the Taxpayer's name prominently displayed thereon.
In the event the customer defaults, the Taxpayer has authority to repossess and resell the security, to sue on the note, or to amend, extend, renew or release the customer's obligation. In practice the Taxpayer rarely, if ever, exercises these *705 powers, but simply resells the paper to the parent corporation, which takes the actions described above.
The agreement between Allis-Chalmers and its dealers is that of buyer and seller and this agreement specifically provides the dealer is not an agent of Allis-Chalmers and is without authority to bind the company.
Section 220.15, Florida Statutes, provides that the adjusted federal income is to be apportioned in accordance with part IV of Chapter 214. Section 214.71 provides that sales of a financial institution such as ACCC are in this state if derived from:
1. Fees, commissions, or other compensation for financial services rendered within this state;
2. Gross profits from trading in stocks, bonds, or other securities managed within this state;
3. Interest and dividends received within this state;
4. Interest charged to customers at places of business maintained within this state for carrying debit balances of margin accounts, without deduction of any costs incurred in carrying such accounts; and
5. Any other gross income resulting from the operation as a financial organization within this state.
Rule 12C-1.15(3)(c) Fla. Admin. Code provides regulations for determining the Florida sales factor for a financial organization. This sales factor is calculated differently than the sales factor for a corporation selling real or tangible property.
(c) Subsection 3 of section 214.71(3)(b), states that "interest and dividends received within the State" are included in the numerator. However, any such income must, in accordance with subsection 5, be earned (not simply received) in this state. Consequently, interest and dividends generated from the following activities will be considered Florida sales and will be included in the numerator of the sales factor:
(i) Interest received on loans secured by real property located in this state, irrespective of place of receipt;
(ii) Interest received on unsecured loans or loans secured by personal property which are made from offices located in this state, irrespective of place of receipt;
(iii) Other interest and dividends received by offices located in this state.
Whether the interest income involved here is includable in the numerator of the apportionment fraction as sales of the financial institution in Florida depends on the applicability of Section 214.71(3)(b)3 or 5. The hearing officer concluded that neither subsection 3 nor subsection 5 applied to ACCC. More specifically, Section 214.71(3)(b)3 authorizing the inclusion of "interest and dividends" did not apply since the interest income involved was not "received within this state." Section 214.71(3)(b)5 authorizing the inclusion of "other gross income" did not apply by virtue of two rules of statutory construction: one, that "since dividends and interest are included in Subparagraph 3 [and interest is also included in Subparagraph 4], the `other income' referred to in Subparagraph 5 must relate to other types of income than that already expressed in Subparagraph 3," the rule known as expressio unius est exclusio alterius; two, that tax laws are to be construed strongly in favor of the taxpayer and against the government. See Department of Revenue v. Brookwood Associates, 324 So.2d 184 (Fla. 1st DCA 1975) cert. denied 336 So.2d 600 (Fla. 1976). As to Rule 12C-1.15(3)(c), the hearing officer concluded that through the rule "the department expressed its conclusion that the legislature in enacting Section 214.71 ... intended to tax those dividends and interest both earned and received in this state, which fit into the categories noted in Subsections (i), (ii) and (iii). This taxpayer fits into none of those categories." The hearing officer elaborated upon this conclusion as follows:
Since the interest received by Taxpayer was not on loans secured by real property, made from offices located in this state, or received by offices located within this state they are not revenues constituting Florida sales for purposes of the *706 sales factor numerator used to compute the income tax of financial organizations.
Finally, the hearing officer considered the Department's argument that the dealer's places of business constituted de facto offices of ACCC bringing Rules 12C-1.15(3)(c)(ii) and (iii) into play, and disposed of the argument as:
unsupported by the factual relationship between the dealer and the Taxpayer. The dealer, pursuant to the Sales and Service Agreement, is not even an agent for Allis-Chalmers, let alone the Taxpayer. He has no relationship with Taxpayer other than that of assignor-assignee once removed. No contract is accepted (executed) by Taxpayer in Florida and no payments are received by Taxpayer in Florida.
The hearing officer recommended dismissal of the assessment.
In the final order the Department of Revenue rejected the hearing officer's conclusions of law. Instead the Department concluded that Rule 12C-1.15(3) implemented only subparagraph 3 of Section 214.71(3)(b) and not subparagraph 5, therefore the interest income was includable under subparagraph 5 as "other gross income" even absent a specific rule indicating that interest income is includable under that section. Further, the Department concluded that a dealer does act as a de facto office for arranging the income-producing transactions, so even if Rule 12C-1.15(3) did implement subparagraph 5 of Section 214.71(3)(b) as well as subparagraph 3, the interest income would be includable pursuant to that rule.
The Department's conclusions of law cannot be sustained. While the statute may not absolutely preclude this type of interest from being included as sales, the Department failed to adequately explain the departure from its own rule which as it stands seems to circumscribe the instances in which interest will be included as Florida sales under Section 214.71(3)(b). Since the agency's deviation from its own rule is not adequately explained by the agency, we must remand the case for action consistent with the rule. Section 120.68(12)(b), Fla. Stat. Therefore, the final order of the Department is REVERSED and REMANDED with instructions to enter the recommended order of the hearing officer as the final order in this case.
ROBERT P. SMITH, Jr., C.J., and MILLS and LARRY G. SMITH, JJ., concur.