414 So.2d 583 (1982)
E.M. WATKINS & COMPANY, INC., Appellant,
v.
BOARD OF REGENTS and Winchester Construction & Engineering, Appellees.
No. AL-32.
District Court of Appeal of Florida, First District.
May 12, 1982.
Rehearing Denied June 17, 1982.
*585 John A. Barley, Tallahassee, for appellant.
Judith A. Brechner, Gen. Counsel and Herbert D. Sikes, Counsel, State Board of Educ., Tallahassee, for Board of Regents, appellee.
Gary P. Sams and Frank E. Matthews, of Hopping, Boyd, Green & Sams, Tallahassee, for Winchester Const. & Engineering, appellee.
PER CURIAM.
E.M. Watkins & Company, Inc. (Watkins) appeals from a final order of the Board of Regents (BOR) awarding the construction contract for the Northwest Regional Data Center (NRDC) at Florida State University to Winchester Construction and Engineering Company, Inc. (Winchester) and finding that Watkins lacked the requisite standing to protest Winchester's bid. We affirm.
On November 16, 1981, BOR, through its architect/agent, published certain bidding documents to solicit sealed bids for the performance of work required to complete construction on the NRDC. The bidding documents were amended on three occasions by three separate addenda prepared by BOR's architects. The first, dated December 10, 1981, changed the bid opening date from December 22, 1981, to January 12, 1982, and contained notice that the pre-bid conference would be conducted on January 4, 1982, in Tallahassee at a place to be announced at a later date. The second addenda, dated December 31, 1981, contained notice that the pre-bid conference would be held in Room 201 of the Westcott Building at FSU. Watkins, however, did not receive the second addendum until January 5th, one day later than the date of the conference. During this pre-bid conference, one of the other contractor's representatives in attendance suggested that the bidding documents fail to indicate which subcontractors were to be identified in the list to be furnished in response to paragraph B-15[1] of the bidding document. As a result of this inquiry, the architect issued a third addendum on January 6, 1982. Couched in mandatory language, this addendum informed the contractors that they should list the mechanical, electrical, roofing, masonry, and access flooring subcontractors. Watkins received this addendum prior to submitting its bid on January 12, 1982.
At approximately 2 p.m. on January 12, 1982, twelve sealed bids were received and opened by BOR. When the bids were tabulated, it was determined that Watkins had submitted the apparent low bid and that Winchester had submitted the second low bid. Upon reading Watkins' list of subcontractors submitted with the bid, it became *586 apparent that Watkins had failed to list three of the five major subcontractors required by the third addendum. Winchester, however, had submitted a complete list of major subcontractors. Watkins' omission was brought to the attention of the firm by telephone, and by 4 p.m. that same day Watkins supplied a supplemental list of subcontractors. As a result of the post-bid discussion by the staff of BOR, its assistant general counsel directed the architect to inform Watkins that its supplemental list of subcontractors was accepted and that it had received the contract.
The next day, the president of Winchester contacted BOR's staff and expressed his concern about the staff's decision to recommend for acceptance a bid which was incomplete at the time of the bid opening. Upon further review, the staff then concluded that the omission of the required subcontractors was material and necessitated the rejection of Watkins' bid as nonresponsive and incomplete. The staff then notified Watkins that the contract would be delivered to Winchester. Acting upon the recommendation of its staff and the submission by Winchester of its evidence to provide a performance and payment bond and a builder's risk insurance policy, BOR decided to award the contract to Winchester subject to a final determination of any protest filed by Watkins. That same day, January 15, 1982, attorneys for Watkins filed a letter with the staff protesting the rejection of its bid and alleging that Winchester's bid was defective.
Ten days later, Watkins filed a petition for a formal administrative hearing pursuant to Section 120.57(1), Florida Statutes. It listed as disputed issues of material fact the following: (1) Whether the bid submitted by Watkins was responsive and was the lowest and best bid for the construction project; and (2) Whether Winchester's bid was responsive and was the lowest and best bid for the project. BOR assigned its general counsel to be the hearing officer for this matter. Prior to the hearing on the merits, the hearing officer entered an order denying Watkins' request for a Section 120.57(1) hearing and granting Winchester's motion for a 120.57(2) hearing. The order also granted leave to either party to request a Section 120.57(1) hearing during the informal hearing should disputed issues of material fact arise. As a result of the informal hearing held on March 5, 1982, the hearing officer issued an order recommending that the contract be awarded to Winchester because its bid was the lowest complete bid conforming to bid requirements and that Watkins be considered to lack the necessary standing to protest Winchester's bid because Watkins' bid was nonconforming. On March 29, 1982, prior to the entry of a final order by BOR, Watkins filed its notice of administrative appeal. The final order of BOR was subsequently rendered on April 6, 1982.[2]
In its appeal Watkins raises a multiplicity of issues: (1) Whether its failure to list the major subcontractors was a material variance to the invitation to bid and thus could not be subsequently amended by Watkins; (2) Whether BOR's policy and practice of requiring contractors to list certain subcontractors is a rule and, as such, is invalid and unenforceable; (3) Whether Section 255.0515, Florida Statutes (1978) and any agency rule which purports to implement that statute constitutes an unconstitutional impairment of Watkins' right to contract, and unlawful delegation of legislative authority, or an unconstitutional denial of equal protection under the law; (4) Whether BOR abused its discretion in failing to afford Watkins a formal administrative hearing and in utilizing its general counsel as the hearing officer; and (5) Whether Watkins had the standing to protest the award of the contract to Winchester and, conversely, whether Winchester had standing to contest the bid.
By its first issue on appeal Watkins argues that its failure to list the subcontractors *587 to this contract cannot be deemed a material omission because Florida Administrative Code Rule 6C-14.21(3)[3] allows the submission of such information at the time of the bid opening or within 48 hours thereafter. We disagree. Certainly, the rule, as BOR admits, is rather inartfully drawn. However, to give it the construction sought by Watkins would directly contravene the provisions of Section 255.0515, Florida Statutes, which provides in relevant part that "the contractor shall not remove or replace subcontractors listed in the bid subsequent to the list being made public at the bid opening, except upon good cause shown." If the rule purports to allow the contractor not to submit a list of subcontractors by the time of the bid opening, then the statute serves no useful purpose and is a nullity. Since agency rules cannot contravene Florida Statutes, such a construction must be rejected. See Seitz v. Duval County School Board, 366 So.2d 119 (Fla. 1st DCA 1979). Further, the transcript of the legislative committee hearings on Section 255.0515 clearly indicates that one of the major purposes of that legislation was to prevent bid shopping by contractors after a bid was awarded. It has long been held that legislative intent is the polestar by which the court should be guided in construing a statute. State v. Webb, 398 So.2d 820, 824 (Fla. 1981). One method of ascertaining the legislative intent is by tracing the legislative history of the act, the evil to be corrected, and the purpose of the enactment. State ex rel. Register v. Safer, 368 So.2d 620, 624 (Fla. 1st DCA 1979). Since the legislative history of a statute is strongly indicative of the legislative intent in enacting that statute, Watkins' proposed construction would also run counter to that intent, i.e., that substituting subcontractors ("bid shopping") be discouraged by requiring the contractor to list its subcontractors prior to the bid opening. The policy reasons behind requiring a list of subcontractors are evident, as noted by the hearing officer in his order:
The unfair bidding advantage one contractor derives from the failure to list required subcontractors is generally threefold: (1) it provides the precious few minutes which may be saved by failing to provide a name for the appropriate blank on form D-1 and matching the name with the price used in the bid computation, (2) it allows the potential for speculation, by use of a phantom price and efforts to shop that item or trade until a subcontractor can be found at the speculative contract price, and (3) it permits a successful bidder to accept additional subcontractor bids after the bid opening, giving the opportunity for undercutting the low subcontractor on whom he relied in formulating his bid.
These policy reasons, implicit in Section 255.0515, thus prevent competitive advantage, insure the quality of the subcontractors, insure public confidence in the bidding process, and encourage future competition. See, e.g., Wester v. Belote, 103 Fla. 976, 138 So. 721 (1931); Baxter's Asphalt and Concrete, Inc. v. Liberty County, 406 So.2d 461 (Fla. 1st DCA 1981); Harry Pepper & Associates, Inc. v. City of Cape Coral, 352 So.2d 1190 (Fla.2d DCA 1977); City of Opa Locka v. Trustees of Plumbing Industry Promotion Fund, 193 So.2d 29 (Fla.3d DCA 1966). Accord LeCesse Brothers Contracting, Inc. v. Town of Williamson, 62 A.D.2d 28, 403 N.Y.S.2d 950 (1978); Matter of Bayonne Park, 168 N.J. Super. 33, 401 A.2d 705 (1979).
By its second issue Watkins urges that this policy and practice of requiring a list of major subcontractors constitutes an invalid rule and, as such, is unenforceable against Watkins. Again, we disagree. To the extent an agency may intend in its final *588 order to rely upon or refer to policy not recorded in rules for discoverable precedents, that policy must be established by expert testimony, documentary opinion, or other evidence appropriate to the nature of the issues involved and the agency must expose and elucidate its reasons for its discretionary action. Florida Cities Water Co. v. Public Service Commission, 384 So.2d 1280 (Fla. 1980); Anheuser-Busch, Inc. v. Dept. of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981); McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). We find that BOR has followed these principles in both the evidentiary support for and explanation of its reasons for requiring a list of subcontractors. This practice is supported by a showing, among other things, of 20 years of consistent state policy regarding public contracts, the legislative history of Section 255.0515 (discussed above), and the factors underlying such a policy: the prevention of bid shopping, protection of subcontractors, insuring future competitive practices, eliminating the advantage of late submission, insuring the integrity of the subcontractors' work, etc.[4] The hearing officer's recommended order, which was adopted in toto by BOR, discusses these considerations in detailed and articulate fashion. Hence, we find no impermissible imposition of agency action pursuant to Chapter 120, Florida Statutes. Even assuming, arguendo, that this agency practice does deviate from Rule 6C-14.21(3), we still find no error. Administrative agencies are not foreclosed from deviating from their own rules, but they must adequately explain their deviation in their order. § 120.68(12)(b); Allis-Chalmers Credit Corp. v. Dept. of Revenue, 408 So.2d 703 (Fla. 1st DCA 1982). Considering the evidentiary support for and the order's justification of this policy, we believe that BOR has adequately explained its deviation, if any, from the cited rule.
By its third issue Watkins makes a multi-pronged attack upon the constitutionality of Section 255.0515. First, it argues that the statute constitutes an invalid delegation of legislative authority because the legislature attached no standards to the phrase "for good cause." For one, Watkins does not have standing to raise this particular sort of constitutional challenge. A person may not raise an objection to a part of a statute unless his rights are in some way injuriously and directly affected. Henderson v. Antonacci, 62 So.2d 5 (Fla. 1952). Watkins could only be adversely affected by the phrase "for good cause" if it tried to substitute a subcontractor and BOR failed to allow it to do so. Even if it does possess the requisite standing to make this attack, we still will not find this statute to constitute an invalid delegation of legislative authority. The legislature may enact a law complete in itself, which leaves some discretion in the operation and enforcement of the law with an administrative official. Department of Citrus v. Griffin, 239 So.2d 577 (Fla. 1970). The distinction to be made is between the "delegation of the power to make the law, which necessarily involves a discretion as to what the law shall be, and the conferring of authority or discretion in executing the law pursuant to and within the confines of the law itself." Connor v. Joe Hatton, Inc., 216 So.2d 209, 211 (Fla. 1968).
The general rule, which requires an express standard to guide the exercise of discretion is also subject to the exception that where it is impracticable to lay down a definite comprehensive rule, such as where regulation turns upon the question of personal fitness, or where the act relates to the administration of a police regulation and is necessary to protect the general welfare, morals, and safety of the public, it is not essential that a specific prescribed standard be expressly stated in *589 the legislation. In such situations the courts will infer that the standard of reasonableness is to be applied.
North Broward Hospital District v. Mizell, 148 So.2d 1, 4, f. 11 (Fla. 1962). Here, "good cause" for substituting subcontractors is not subject to a single comprehensive rule, for each project has different problems which demand different considerations and different requirements. It is a matter which turns not only on "personal fitness" of the contractor and subcontractors, but also insures and protects the general welfare and safety of the public.
We find no merit in Watkins' contentions that the statute offends the constitutional provision against impairing contracts or equal protection under the law. Further, we cannot agree that the legislature has not enacted any statute delegating authority to BOR to require the listing of subcontractors. Any fair and reasonable reading of Section 255.0515 implicitly authorizes that agency to do so. Additionally, as noted above, this statutory authorization is buttressed by the legislative history of the act.
Watkins has also argued that BOR abused its discretion in appointing its general counsel to be the hearing officer and in failing to afford to Watkins a formal administrative hearing pursuant to Section 120.57(1), Florida Statutes. Addressing the latter question first, we find that there are no disputed issues of material fact in this cause. There is no dispute as to the scenario of events and circumstances that led to this dispute. The bidding process and the parties' respective activities, as well as BOR's, are well documented and uncontested. The crux of this dispute really involves legal constructions and interpretations applied to the undisputed facts. While these legal issues, i.e., the materiality of the omissions to Watkins' bid and the propriety of BOR's rejection of it and the award of the contract to Winchester, may require evidence of agency policy and procedure, these issues are appropriate to a Section 120.57(2) hearing. See United States Service Industries-Florida v. Dept. of Health and Rehabilitative Services, 385 So.2d 1147 (Fla. 1st DCA 1980). There being no disputed issues of material fact, there is inherently no problem with the use of the agency's general counsel as the hearing officer. Bias cannot be presumed merely because of his prior association with the agency, Meyer v. State, Dept. of Business Regulation, Division of Pari-Mutuel Wagering, 402 So.2d 527 (Fla. 3d DCA 1981), and we are unable to identify any specific incidents of bias on his part.
We have considered Watkins' argument that Winchester lacks standing and find it to be without merit. Our resolution of this and the other issues disposes of our need to address the question of whether Watkins itself had standing to contest BOR's award of the contract.
AFFIRMED.
McCORD, MILLS and SHIVERS, JJ., concur.
NOTES
[1] B-15 Listing of Subcontractors

In order that the Owner may be assured that only qualified and competent subcontractors will be employed on the project each Bidder shall submit with his Proposal a list of the subcontractors who will perform the work for each Division of the Specifications as indicated by the "List of Subcontractors" form contained in these specifications. The Bidder shall have determined to his own complete satisfaction that a listed subcontractor has been successfully engaged in this particular type of business for a reasonable length of time, has successfully completed installations comparable to that which is required by this Agreement and is qualified both technically and financially to perform that pertinent phase of this work for which he is listed. Only one subcontractor shall be listed for each phase of the work.
The applicable subcontractor license registration or certification number must be noted on the bid opposite his name, and in the event that the subcontractor is a corporation, his State Corporate Charter Number shall also be noted. If the subcontractor is an out of state firm, their Charter Number with the Secretary of State to do business in the State of Florida should also be noted.
After public opening and reading of proposals, the listing of subcontractors submitted by the apparent low Bidder will be read publicly. The listings of other bidders will be returned.
No change shall be made in the list of subcontractors, before or after the award of a contract, unless agreed to in writing by the Owner.
[2] Watkins' notice of appeal was prematurely filed. However, as of the date of rendition of BOR's final order, the notice of appeal matured and vested jurisdiction in this court. Williams v. State, 324 So.2d 74, 79 (Fla. 1975).
[3] Fla. Admin. Code Rule 6C-14.21(3) states, in relevant part, that: "... . Each firm notified of its eligibility may submit a proposal at the time and place specified. All bidders must submit proof of insurance in effect as required under paragraph (2)(c)2. of 6C-14.21, a letter of intent to provide performance and payment bonds as required under paragraph (2)(c)1. of 6C-14.21, and any other provisions required under paragraph (2)(c)3. of 6C-14.21 as specified in the "Instructions to Bidders" section of the project's specification with their bid proposal or within 48 hours after the bid opening."
[4] Watkins' claim of lack of notice as to this requirement seems a bit ingenuous. The language of the third addendum was couched in mandatory terms and clearly requires the listing of the major subcontractors. The mere fact that Watkins did not receive timely notification of the exact location for the pre-bid conference is of no avail, for Watkins already knew that the conference was to take place on that date, January 4, 1982, and could have easily learned of the location by a telephone call.