# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**791.1**
**CA 12-00843**
PRESENT: SCUDDER, P.J., SMITH, FAHEY, LINDLEY, AND MARTOCHE, JJ.

---

IN THE MATTER OF ACCADIA SITE CONTRACTING, INC.,
PETITIONER-APPELLANT,

V                                                    MEMORANDUM AND ORDER

ANTHONY F. CARUANA, SUPERVISOR, TOWN OF TONAWANDA,
MEMBERS OF TOWN OF TONAWANDA BOARD, IN THEIR
OFFICIAL CAPACITIES, YARUSSI CONSTRUCTION, INC.,
AND CONCRETE APPLIED TECHNOLOGIES, INC.,
RESPONDENTS-RESPONDENTS.

---

LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (JEFFREY F. REINA OF
COUNSEL), FOR PETITIONER-APPELLANT.

DUKE, HOLZMAN, PHOTIADIS & GRESENS LLP, BUFFALO (PATRICIA GILLEN OF
COUNSEL), FOR RESPONDENT-RESPONDENT CONCRETE APPLIED TECHNOLOGIES,
INC.

COLUCCI & GALLAHER, P.C., BUFFALO (PAUL G. JOYCE OF COUNSEL), FOR
RESPONDENTS-RESPONDENTS ANTHONY F. CARUANA, SUPERVISOR, TOWN OF
TONAWANDA, AND MEMBERS OF TOWN OF TONAWANDA BOARD, IN THEIR OFFICIAL
CAPACITIES.

---

Appeal from a judgment (denominated order) of the Supreme Court, Erie County (John F. O'Donnell, J.), entered April 23, 2012 in a proceeding pursuant to CPLR article 78. The judgment dismissed the proceeding and vacated a temporary restraining order.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.

Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking, inter alia, to restrain the Town of Tonawanda respondents (collectively, Town) from proceeding on a contract with respondent Concrete Applied Technologies, Inc. (CATCO), the second lowest bidder for a public works project aimed at repairing and improving the Town's sanitary sewer system (project), and requiring the Town to re-bid the contract for the project. After granting petitioner a temporary restraining order (TRO) pending a hearing and later holding such a hearing, Supreme Court dismissed the proceeding and vacated the TRO. We granted a stay pending this expedited appeal by petitioner, and now affirm.

Pursuant to the terms of the "bid book" provided to prospective bidders, they were required to agree to all of the contractual

provisions, including a provision that requires the winning bidder to indemnify the Town for any claims "arising out of or incidental to" work on the project. Additionally, the bid book informed prospective bidders that the Town would not accept "[c]onditional bids."

Upon reviewing the specifications for the project, petitioner, a prospective bidder, became concerned about the property damage that could result from performing the "sheet piling" component of the project. In a letter dated January 11, 2012, a representative of petitioner informed a representative of the entity hired by the Town to oversee the project that, "should [petitioner] be the low bidder on the project, [petitioner] will not be held responsible for any damage" stemming from the sheet piling work. The letter also stated that petitioner "wishe[d] to go on record prior to the bid regarding this situation and will be held harmless should any damage claims [arise] from the piles being driven through the clay strata."

Petitioner thereafter submitted a compliant bid proposal in which it affirmed its understanding of the terms of the contract governing the project and neither referenced nor attached its pre-bid letter. When the Town publicly opened the seven bids it received for the project, petitioner's bid was the lowest and CATCO's bid was the second lowest. By a subsequent resolution, the Town determined that petitioner's bid was made conditional by its pre-bid letter and was therefore nonresponsive. The Town thus awarded the project to CATCO, the second lowest bidder.

A municipality that solicits bids for a public works project generally must award the contract for that project to the "lowest responsible bidder" (Town Law § 122; see General Municipal Law § 103 [1]; *Matter of AAA Carting & Rubbish Removal, Inc. v Town of Southeast*, 17 NY3d 136, 142). If a bid fails to comply with bid specifications, the municipality may waive such noncompliance "if the defect is a mere irregularity and it is in the best interests of the municipality to do so" (*Le Cesse Bros. Contr. v Town Bd. of Town of Williamson*, 62 AD2d 28, 32, *affd* 46 NY2d 960). If, however, "the variance between the bid and the specification is material or substantial, . . . the defect may not be waived and the municipality must reject the bid so that all bidders may be treated alike and so that the possibility of fraud, corruption or favoritism is avoided" (*id.*). The municipality "has the right to determine whether a variance from bid specifications is material" (*Matter of AT&T Communications v County of Nassau*, 214 AD2d 666, 667), and such a determination " 'must be upheld by the courts if supported by any rational basis' " (*Diamond D Constr. Corp. v County of Erie*, 209 AD2d 922, 923). A variance from bid specifications is material, and thus cannot be waived by a municipality, if the variance "affect[ed] the competitive character of the bidding" and gave the bidder "a substantial advantage or benefit not enjoyed by the other bidders" (*Le Cesse Bros. Contr.*, 62 AD2d at 32; see *Diamond D Constr. Corp.*, 209 AD2d at 922-923). In a CPLR article 78 proceeding challenging a municipality's handling of bids for a public works project, the municipality's "discretionary decision [to reject any bids] ought not to be disturbed by the courts unless [that decision is] irrational,

dishonest or otherwise unlawful" (*Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth.*, 66 NY2d 144, 149).

Here, we conclude that the determination of the Town that petitioner's bid was conditional and nonresponsive, and thus constituted a material variance from the project's bid specifications, was rational, honest, and lawful (*see generally id.*). The unequivocal language of petitioner's pre-bid letter was such that it was reasonable for the Town to conclude that the term stated therein concerning the refusal to be held liable for any damage arising from the sheet piling work was intended to impose a condition on petitioner's subsequent bid proposal regardless of whether the pre-bid letter was attached to or otherwise incorporated into that proposal. Because petitioner indicated prior to submitting its bid that it did not intend to comply with the indemnification clause in the contract governing the project with respect to an apparently risky component of the project to which other bidders would be subject, we conclude that the Town had a " 'rational basis' " for determining that petitioner's bid materially deviated from the bid specifications (*Diamond D Constr. Corp.*, 209 AD2d at 923; *see generally Le Cesse Bros. Contr.*, 62 AD2d at 31-32). Thus, it was reasonable for the Town to determine that petitioner had "a substantial advantage or benefit not enjoyed by the other bidders" (*Le Cesse Bros. Contr.*, 62 AD2d at 32), because the Town reasonably could have believed that, if other bidders had known that they could shift liability to the Town for claims arising out of the sheet piling work, their bids would have been lower. Inasmuch as it was reasonable for the Town to deem petitioner's bid variance "material," it necessarily follows that it was reasonable for the Town to reject petitioner's bid and to accept the next lowest bid (*id.*).

Petitioner's contention that the parol evidence rule barred the Town from considering its pre-bid letter is without merit because petitioner's bid was a mere offer to contract (*see S.S.I. Invs. v Korea Tungsten Min. Co.*, 80 AD2d 155, 157-159, *affd* 55 NY2d 934; *Le Cesse Bros. Contr.*, 62 AD2d at 33), and because there was no written contract between the Town and petitioner (*see generally W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 161-162). Moreover, contrary to petitioner's contention, it was not required to send its pre-bid letter pursuant to the terms of the "Information to Bidders" portion of the bid book. The section to which petitioner refers states that prospective bidders should notify the Town of "discrepancies[] in, or omissions from the Drawings or Contract Documents" and should inquire if they are "in doubt as to their meaning," but petitioner's letter did neither. Finally, although petitioner is correct that CATCO and several other bidders, like petitioner, estimated a cost of $0.01 per square foot for the sheet piling work, which may have been an indication that those bidders did not intend to carry out that part of the project, the fact remains that only petitioner expressly stated its intention to demand that the contract be altered to hold it harmless for that activity.

Entered:  June 15, 2012                    Frances E. Cafarell
                                           Clerk of the Court